## GUARANTY BOND STATE BANK OF TIMPSON v. REDDING et al. (No. 1887.)

Court of Civil Appeals of Texas. Beaumont. Nov. 26, 1929.

Rehearing Denied Jan. 22, 1930.

Sanders & Lane, of Center, for appellant. Sanders & McLeroy and Anderson & Lewis, all of Center, for appellee.

O'QUINN, J. Appellees, W. E. Redding and his wife, Mrs. N. J. Redding, brought this suit against the Guaranty Bond State Bank of Timpson, Tex., B. F. Giles, constable of precinct No. 7 of Shelby county, Texas, and E. J. McLeroy and S. C. Choate, sureties on Giles' official bond, for conversion of seven

bales of cotton, alleged to be worth $724.47. They also sued for exemplary damages in the sum of $1,000. They alleged that they were the owners of a certain farm and that they rented some 50 acres of said farm to one Rich Mosby for the year 1928 for the agreed rental of one-third of the grain and one-fourth of the cotton raised by Mosby on said farm that year. They further alleged that they furnished said Mosby with $162 cash, one mule at $66.55, one wagon at $38, one pair of wagon lines worth $3, and cotton seed for planting worth $3, aggregating the sum of $272.55, all for the purpose of enabling said Mosby to make and gather a crop on said land for the year 1928, and for which rents and advances so furnished they had and held a landlord's lien on the crops so made by Mosby. They further alleged that during said year 1928 the said Mosby raised and gathered seven bales of cotton on said premises and delivered same to appellees in satisfaction of their debt, and that on November 19, 1928, said cotton was worth 19 cents per pound. They further alleged that on November 19, 1928, defendant Giles, constable, and the defendant bank, unlawfully, wantonly, and with legal malice and without justification entered upon the premises of appellees and did break and enter a building belonging to appellees in which said cotton was stored, and did then and. there wantonly, unlawfully, and with legal malice take possession of said cotton and convert same to the use and benefit of said defendants; that said acts of said defendants were fraudulent, malicious, and oppressive to appellees and caused them damages in the actual value of said cotton, $724.47, and because of said fraudulent, malicious, and unlawful acts, and gross negligence and oppressiveness on the part of appellants, appellees had suffered mental pain and anguish in the further sum of $1,000, for which they prayed judgment as exemplary damages.

The defendant bank answered and alleged that on January 30, 1928, Rich Mosby, tenant of appellees, executed and delivered to it his note for $220, due October 1, 1928, with 10 per cent. interest thereon from maturity, and to secure the payment of said note delivered to said bank his mortgage, in writing, which covered the entire crop of said Mosby for the year 1928 grown on the Redding farm, and which mortgage covered and secured any further debt or additional sum for which he might become indebted to said bank; that when said mortgage was executed said Mosby then owed it the sum of $110, evidenced by his note dated January 12, 1928, and that said Mosby executed other notes, one in the sum of $55 due October 1, 1928, and one for the sum of $32 due September 1, 1928, all of which notes bore interest at the rate of 10 per cent. per annum from their maturity and also provided for 10 per

cent. additional as attorney's fees if placed in the hands of an attorney for collection; that by reason of said mortgage it had a subsisting, unsatisfied mortgage lien on said seven bales of cotton to secure payment of said notes; that said mortgage provided that said defendant bank, when said debt became due and was not paid, should have the right, through its agent, to take possession of all of said mortgaged property and sell the same at either public or private sale; that all of said indebtedness, except $18, which had been paid on said $32 note, became due and was unpaid, and it (the defendant bank) elected its option to take possession of said mortgaged property and sell same at private sale, which it did with the consent of said Mosby; that exercising its said right, it took possession of five bales of said cotton on about November 28, 1928, and sold same December 3, 1928, for 18.44 cents per pound, the amount received for same being $505.99, and applied said amount to the payment of the notes owed to it by said Mosby, and after paying some small amounts for insurance and compress charges there remained the sum of $63.89, which it tendered into court; that appellees then had two bales of said cotton in their possession, which was more than sufficient to pay the rent on said land, and denied that appellees had furnished Mosby anything for the year 1928 with which to make a crop for said year. They further denied generally all the material allegations in appellees' petition. Defendants Giles, McLeroy, and Choate answered adopting all the allegations of the defendant bank.

The cause was tried to a jury upon special issues, in answer to which they found that appellees had furnished Rich Mosby, their tenant, money in the sum of $162; one mule, $66.55; one wagon, $38; one set of wagon lines, $3; and cotton seed, $3, amounting to $272.55, all for the purpose of making a crop for. the year 1928; and awarded appellees exemplary damages in the sum of $500.

It was agreed that the seven bales of cotton in question weighed 3,849 pounds, one-fourth of which, 962 pounds, was due appellees as rent. It was further agreed that two bales of said cotton, weighing 1,102 pounds, were in the possession of appellees, to be applied on their claim for rent and supplies, and that after deducting 962 pounds for rent, there remained 140 pounds, which was worth 18.44 cents per pound, amounting to $25.81, which the court applied on the money judgment awarded to appellees, so that the judgment rendered for appellees was for $246.74 actual damages, and $500 as exemplary damages, against appellants, the bank and Giles. This judgment was entered by the clerk February 21, 1929. On March 19, 1929, at same term of the court, a corrected judgment was entered. This judgment discharged defendants McLeroy and Choate with their costs.

Appellant's brief contains 15 assignments of error, upon which are based 23 propositions. The first assignment, that no legal jury was impaneled to try the case, is abandoned.

■ Propositions 2, 3, and 4 assert that the court was without power to render and enter the judgment of date March 19, 1929, appealed from. This contention is based upon the following facts: After verdict of the jury, upon motion for judgment by appellees, plaintiffs below, judgment was entered against all defendants on February 21, 1929. An amended motion for a new trial was filed by the defendants bank and Giles, on March 19, 1929. Defendants McLeroy and Choate filed motion for a new trial on February 23, 1929. The contention of these defendants was that there was no evidence connecting them with any of the acts alleged by the plaintiffs against defendants bank and Giles, and no evidence to show that they, or either of them, were bondsmen for defendant Giles. The motions of all defendants for a new trial were heard on March 19, 1929, and the court, after inspecting the judgment entered by the clerk of the court on February 21, 1929, found said judgment to be erroneous and disapproved same for said reason and set same aside, his judgment thereon reciting:

"On this the 19th day of March, A. D. 1929, the court after reading the judgment heretofore entered by the clerk in this cause, on the 21st day of February, A. D. 1929, finds the same to be erroneous and the same is not the judgment of the court, the same having been entered during the present term of this court, the court convening on the 11th day of February, A. D. 1929, and does by law continue in session until the 23d day of March, A. D. 1929, and the cancellation of the judgment of February 21, 1929, as entered by the clerk, and the entry of this judgment by the court is had during the present and same term of the court. The former judgment referred to is hereby cancelled, annulled and held for naught, and it will now constitute no part of the record in this cause. The judgment herein shall be and is the judgment of the court in this cause."

And the court then proceeded to enter the corrected judgment against the defendants bank and Giles, as above stated.

The gist of the insistence is that as judgment had been entered on the jury's findings on February 21, 1929, and motion for a new trial had been filed and urged by all the defendants, that the court, on hearing the motions, could not grant the motion of defendants McLeroy and Choate and discharge them, and at the same time enter a new judgment holding appellants bank and Giles, but should have set the judgment aside and granted all parties a new trial. The assignments are overruled. According to the record, the court did not enter a new and different judgment on March 19, 1929, but when the motions for a new trial were called to his attention, and upon inspecting the judgment entered by the clerk, he found said judgment so entered to be incorrect, and merely entered judgment correcting same. This the court had the power to do. Article 2228, R. S. 1925. If the first judgment was erroneous, and was not the judgment of the court, it was its right and duty to correct the judgment, so as to have it speak the truth. Until the adjournment of the term, a court has full control over its judgments and can, upon its own motion or motion of a party, set aside or reform the same, or grant a new trial, according to the justice of the case, upon the merits as well as for matters of form.

Appellants' fifth, sixth, and seventh propositions assert, in effect, that a landlord permitting a tenant to retain money due the landlord for rent or furnishings for the year 1927 in order that the tenant might use same for the year 1928, was not entitled to a lien on such crop for the year 1928, it not being furnished for such year, within the meaning of article 5222, R. S., as to a landlord's lien.

■ Appellees, plaintiffs below, testified that their tenant, Rich Mosby, rented land from them for the year 1927, and that at the end of that year he owed them a balance of $162; that in December of that year he came to them with the money to pay them, but stated that he wanted to borrow it from them to be used by him in making and gathering a crop in 1928; that after several talks between them, he having rented their land for the year 1928, on January 3, 1928, they agreed to loan him the money to be so used by him. He did not pay the money to them, and they then hand it back to him, but they testified that he came to them and said he had the money and would pay it to them, but insisted and urged that he wanted to borrow it from them to use in making and gathering the 1928 crop, and that they agreed to and did then let him have it for that purpose. Mosby testified that no such transaction took place. Appellants say that no such transaction took place between appellees and Mosby, and that, if it did, it was but a carrying over from the year 1927 of a debt owed by Mosby to appellees, and could not be a lien on the 1928 crop, and was not a furnishing of supplies or means within the meaning of article 5222, R. S., prescribing a landlord's lien. The court submitted the question to the jury as a special issue, as follows:

"Special Issue No. 1.

"From a preponderance of the evidence in this case, what do you find, if anything, that plaintiffs, W. E. Redding and wife, furnished to Richard Mosby, their tenant, by way of furnishings and supplies for the purpose of

460

making a crop on their place during the year 1928?

"State in your answer to this question if any you find, each item and the value of each."

In answer to this question the jury found, among other items, the $162 alleged by plaintiffs. Whether appellees let Mosby have the money was a question of fact and the jury found same in favor of appellees. But appellants say that said issue, in form and substance, as given, should not have been submitted to the jury. They objected and excepted to said issue in said charge upon the ground that it did not sufficiently enlighten the jury as to the law applicable to the facts for the specific reason that it did not tell the jury that any indebtedness of Mosby to appellees for the year 1927 carried over to the year 1928, could not be considered by the jury in arriving at the amount, if any, furnished by plaintiffs to Mosby for the year 1928. The court overruled this exception to the charge and appellants then presented and requested the court to give their special charge No. 1, as follows:

"Gentlemen of the jury: As to the item of $162, as alleged by the plaintiffs to have been furnished by them to Richard Mosby on January 3, 1928, you are instructed that such item cannot be considered by you in arriving at any amount, if any, furnished by plaintiffs to Richard Mosby by way of furnishings and supplies for the purpose of enabling him to make a crop on plaintiffs' place during the year 1928."

This charge was refused. Appellants then presented and requested the court to give their special charge No. 2, to wit:

"Gentlemen of the jury: In your consideration of what you may find, if anything, that the plaintiffs, W. E. Redding and wife, furnished to Richard Mosby, their tenant, by the way of furnishings and supplies for the purpose of making a crop on their place during the year 1928, you are instructed that if you should find that any of the items as alleged in plaintiffs' petition were actually furnished during the year 1927, then you cannot consider such items, if any, in arriving at what was furnished by plaintiffs to Richard Mosby, if anything, by way of furnishings and supplies for the purpose of enabling Richard Mosby to make a crop on plaintiffs' place during the year 1928."

This charge was refused. Appellants say that the court's overruling their exceptions and objections to the charge, and his refusal to give their requested charges were errors; for which the judgment should be reversed. The court did not err in overruling appellants' objections and exceptions to special issue No. 1 in the court's charge. It was sufficiently specific. It required the jury

to find what items and the value of each were furnished by appellees to their tenant, Mosby, for the purpose of his making a crop on their premises for the year 1928. This was a proper issue, and covered every matter sought to be submitted by appellants. It was not error to refuse special charge No. 1, because it was not applicable to the facts of the case. Special charge No. 2 was covered by the main charge. The contention of appellants that anything furnished in 1927 to the tenant for the purpose of his making a crop during 1928 would not entitle appellees to the landlord's lien on the 1928 crop, as an abstract proposition of law, is not correct. If the money, $162, was furnished to the tenant in December, 1927, but was for the purpose of enabling him to make a crop in 1928, then the fact that it was furnished him before January, 1928, did not affect the landlord's rights as to a lien. However, we take it, appellants do not mean to gainsay this, but that they are insisting that the money, $162, was a debt due to appellees by Mosby for matters and advances and furnishings, if at all, made in 1927, and that it was simply carried over to 1928 as a debt due appellees by their tenant. Whether this was true, or whether, as insisted by appellees, Mosby owed them the money and when he went to pay same, they, at his request, loaned the money to him for the purpose of enabling him to make a crop on their land in 1928, was a question of fact for the jury, and was submitted to the jury as special issue No. 1 in the court's charge, and found by the jury in appellees' favor. If the transaction was as testified to by appellees, then said money would have been furnished within the law, and the jury was justified in so finding.

Appellants' eighth assignment is that the court erred in refusing to give their special requested charge No. 3, which reads:

"If you should find that the wagon as mentioned and charged in plaintiffs' petition, was sold by the plaintiffs to Rich Mosby during the year 1928, then you will answer the following question: Did Rich Mosby pay for such wagon by clearing land for the plaintiffs or otherwise?"

It was alleged by plaintiffs, and the jury found, that they furnished Mosby a wagon to aid him in making a crop in 1928. Mosby admitted getting the wagon, but testified that he was to and did pay for same by clearing land for plaintiffs. Appellees admitted that Mosby cleared land for them, but said they paid him for said clearing otherwise than with the wagon. Whether the wagon had been paid for was a disputed question, and the court erred in refusing the special charge. Appellees, however, say that if we should hold the refusal of the charge was error, then they request that we simply re-

form the judgment by taking from it the price of the wagon, $38, which will be done.

■ Appellants' ninth proposition asserts that where a tenant executes to a third person a mortgage on the crop raised by the tenant on the farm of a landlord and the mortgage provides that if default of payment is made the mortgagee should have the right to take possession of the mortgaged property with or without the consent of the tenant, and the crop raised by the tenant having been gathered and delivered by the tenant into the possession of the landlord, the mortgagee would have the right to take possession of the mortgaged property, upon default of the debt mentioned in the mortgage.

The assignment is overruled. Article 5222, R. S. 1925, gives to a landlord a preference lien upon all crops raised by the tenant for any rent that may become due and for all money and the value of all animals, tools, provisions, and supplies furnished by the landlord to the tenant to make a crop on the rented premises. If the tenant receives furnishings from the landlord, and also borrows money from a bank and gives the bank a mortgage on his crop to secure the payment of the money so borrowed, and in that mortgage it is provided that if default is made by the tenant in paying the bank its money, the bank shall have the right to take possession of the mortgaged property with or without the consent of the mortgagor, the landlord's lien is superior to that of the bank, and the bank mortgagee has no legal authority to take possession of the mortgaged property over the protest of the landlord, and especially is this true where the mortgaged property is in the possession of the landlord, who is holding same for the payment of his rent and furnishings supplied the tenant to enable him to make the crop. We have carefully examined all the authorities cited by appellants in support of this proposition, but find none of them in point.

■ Appellants' eleventh to sixteenth propositions, inclusive, assail the right of appellees to recover exemplary damages. It is contended that the taking of the property was in a peaceful and orderly manner, and without malice, and that the court erred in charging the jury that the taking was wrongful and appellees entitled to exemplary damages. As before stated, the cotton was in the possession of appellees, was grown on their rented premises, and they were holding same under claim of landlord's lien for rent and supplies furnished their tenant to make the crop. Appellants, with full knowledge of all the facts, and in defiance of appellees' protest, went upon the premises of appellees, opened the structure in which the cotton was stored, took the cotton and sold same and appropriated the proceeds thereof to the satisfaction of the mortgage held by the defendant bank on said cotton given by the tenant. The fact that no disturbance of the peace resulted from the taking does not take the wrong out of appellants' acts. They were done intentionally, deliberately and in utter and willful disregard of appellees' rights, and in law amounted to a willful trespass. In such case the injured party is entitled to exemplary damages, for the intentional doing of an unlawful act without justification or excuse is ordinarily malicious. Therefore there was no error in the court's submitting the question of exemplary damages to the jury.

Propositions 17 to 23, inclusive, in effect, complain that the verdict of the jury, and the judgment thereon, are not supported by the evidence. These assignments are overruled. There is sufficient support in the record for the findings of the jury. There is no complaint that the amount awarded as exemplary damage is excessive. The whole contention is that, under the facts in evidence, exemplary damages could not be recovered. This contention cannot be sustained.

As above stated, the judgment should be reformed, so as to strike therefrom the item of $38 for a wagon, which is here done. No other error appearing, the judgment as reformed should be affirmed, and it is so ordered. The costs of this appeal will be taxed against appellees.

### On Motion for Additional Findings of Fact.

Appellants object to our statement in the original opinion that: "This judgment was entered by the clerk February 21, 1929. On March 19, 1929, at the same term of this court, a corrected judgment was entered." The objection is to that part stating that the judgment was entered by the clerk. There are other statements in the course of the opinion that the clerk entered the judgment on February 21, 1929. These are all objected to. The reason for the objection is that appellants insist that the judgment entered on said date was entered on motion of appellees in writing, the judgment so entered being the judgment offered and attached to said motion of appellees for judgment, which motion was granted and signed by the judge. On March 19, 1929, at the same term of the court at which the judgment was entered, when passing upon motions of the defendants for a new trial, the court upon inspecting the judgment entered on February 21, 1929, found same to be erroneous, disapproved same and set same aside and entered the judgment appealed from. The contention of appellants is that our statement that the judgment of February 21, 1929, was entered by the clerk is not correct, in that, said statement, they contend, conveys the idea that the clerk, without the approval of the court, entered said judgment, whereas it is

462

.insisted that said judgment was that of the court, as evidenced by his granting and signing appellants' motion for judgment attached to which was the judgment entered by the clerk.

We find that appellants did file a motion for judgment based upon the verdict of the jury and that a form of judgment, being that entered on February 21, 1929, was attached to said motion. We further find that the judgment so prayed was signed by the judge and entered of record by the clerk. We further find that on March 19, 1929, when the several defendants called up their motions for a new trial, the court inspected the judgment entered on February 21, 1929, declared same to be erroneous, set same aside, and thereupon entered the judgment appealed from as the judgment of the court in the cause. This is fully shown in this judgment quoted in the original opinion, supra.

As bearing upon the question of exemplary damages, appellants complain of our finding that "appellants, with full knowledge of all the facts, and in defiance of appellees' protest, went upon the premises of appellees, opened the structure in which the cotton was stored, took the cotton," etc., and as that we find and quote the following testimony of the defendant Giles relative to taking the cotton:

Giles testified: "I went out to Mrs. Redding's farm under the instructions of the Guaranty Bond State Bank. When I went there to levy on the cotton, I had a copy of the mortgage on it, but I did not have any paper issued out of any court in this state, other than a certified copy of the mortgage I did not have any writ of attachment but it was my understanding that one had been issued. * * * When I started after that cotton, I first called Mrs. Redding and her husband, and told them I was going out to their place and get five bales of cotton that they had stored there and I read the copy of the mortgage to them."

He further testified:

"When I went there the cotton was under a shed in the lot on Mr. and Mrs. Redding's place. That house was enclosed at that time, but it was not closed—one of the doors was open about six or eight inches, and I opened one of the double doors in the front of the building and I took a truck there and got the cotton and took it off."

In view of this last testimony of Giles, we adhere to our finding that over the protest of appellees appellants opened the structure in which the cotton was stored and took the cotton and sold it and appropriated the proceeds thereof to the satisfaction of the mortgage held by the defendant bank.

The above findings are made in answer to the request of appellants.