## GILLETT v. TALLEY et al.

### No. 7856.

Court of Civil Appeals of Texas. Austin.
May 10, 1933.

E. B. Coopwood and Nye H. Clark, both of Lockhart, for appellant.

Tom Gambrell, of Lockhart, and Jas. G. Cook, of Sinton, for appellee First State Bank of Mathis.

McCLENDON, Chief Justice.

This appeal involves a controversy between Gillett, landlord of Talley, and the bank (First State Bank of Mathis), holder of a crop mortgage given by Talley, as to whether Gillett had a landlord's lien upon 15 bales of cotton to secure Talley's note for $1,228.72. In a trial to the court without a jury the judgment was in favor of the bank, and Gillett has appealed.

The controlling facts, which were without dispute, except where noted, follow:

Gillett owned 400 acres of land upon which Talley was his tenant during the years 1928 and 1929. In August, 1929, Talley was indebted to Gillett in the amount of the note, a part of which (but how much is not shown) was for advances for the 1928 crop year, and the balance for the 1929 crop year. There had been some negotiations between the parties to renew the tenancy for the 1930 crop year, and on August 30, 1929, Gillett wrote Talley:

"On my way back from Mathis, and since my return, I have thought over the matter suggested by you concerning my carrying over the debt you owe us for advances to make the crop with this year, and I have concluded that I cannot do this, for the reason, if I carry the debt over, I would not have a lien on your 1930 crop to secure the payment of it. However, you can pay us the debt that you now owe, and then we could then lend you back a like amount of money as an advancement on which to work the 1930 crop, and in this way we would be secured by our landlord's lien on the crop for 1930 without trouble and expense of taking a mortgage on the crop. I have never asked you to give us a mortgage on any thing for the money furnished you, and by your paying the money you owe us and then us lending you a like sum of money back, the question of a mortgage may be eliminated.

"If you will think about the matter, I feel sure you will get my view point. I want you to work the place this next year, and if you will come up, we can fix the matter up along the line suggested above."

Early in October, 1929, Talley executed the note. It was dated October 1, 1929. and due August 1, 1930. Talley gave Gillett his check on the Lockhart National Bank for $1,228.72, and Gillett gave Talley his check on the First National Bank of Lockhart for a like amount. These checks were cleared on October 5, 1929, on the books of the First National Bank of Lockhart. Talley had no funds in the Lockhart National Bank in which he deposited the Gillett check. This deposit was absorbed by the Talley check to Gillett. Talley's version of the transaction is embodied in the following quotation from his testimony: "I was renting the land on the third and fourth, and I believe $5.00 an acre for the feed land. October 1929 was the end of the crop season for 1929. I had a transaction of settlement with Mr. Gillett at that time. I owed him some money at that time. I owed him something like $1250.00 the best I remember. It was for a poison machine and some feed land rent, and maybe some that I owed him from the year before. As to whether I paid Mr. Gillett $1228.00, I gave him a check for it. As to how the deal was handled, and where, it was in Mr. Gillett's office here in Lockhart. Mr. Gillett was down at the farm at the end of the crop year 1929, and he told me when I had finished to come up and we would have a settlement and start on another year. I told him I would come up, but I couldn't settle up, that I didn't have no money. He said 'I understand that, but we will fix that up when you get up here'; he said that he would loan me the money in order that he would have a landlord's lien on the crop for another year. I did not pay him that debt; I gave him a check for it. I gave him my check for $1228.00, and he gave me one for the same amount, and I signed a note for the same amount. I told him when I gave him the check that I didn't have any money in the bank, and for him to hold my check and give me time to deposit his check. That is about all that was said; I took his check and deposited in the Lockhart National Bank. I had not done any business with the Lock-

hart National Bank since 1925. As to where I got the money to deposit in the Lockhart bank to take up my check, I got Mr. Gillett's check. I had no money in my name in that bank until I deposited Mr. Gillett's check. He gave me his check on the First National Bank. I don't know what he did with my check; I suppose he deposited it and it was charged to my account at the Lockhart National Bank. I never gave but the one check on that account; and I never made but the one deposit. I got no money out of that transaction. I executed a note to him. I still owe him that note."

The only material difference between Talley's and Gillett's version is that the latter denies Talley told him he had no money in the Lockhart Bank. He had, he said, no knowledge on that subject whatever at the time, but later learned that such was the fact.

On January 3, 1930, the Mathis bank loaned Talley $2,700, taking a crop mortgage covering the cotton in question. This mortgage was duly recorded January 7, 1930. Gillett testified that at the time the note was given Talley still had some feedstuff, cotton, and machinery on the place which was secured by landlord's lien for 1929 advances. But there was no evidence as to the amount or value of this property.

The theory of appellant is that the transaction resulting in execution of the note was (1) a novation, payment, and extinguishment of the prior debt, the Talley check being given and received as such payment; and that (2) the Gillett check constituted a cash advancement "furnished" to assist Talley in making his 1930 crop.

It may be conceded for the purposes of this appeal that (1) above is correct; but it does not follow that (2) is likewise correct.

■ A chattel mortgage may be created by oral contract (Sparkman v. Bank, 112 Tex. 33, 244 S. W. 127); and we may assume that the effect of the negotiations was to create such mortgage. It would, however, be good only between the parties, since it was not registered.

■ The parties could not, however, by agreement constitute that a landlord's lien, which, but for the agreement to that effect, would not constitute such lien. A landlord's lien arises by operation of law from facts which bring the transaction within the terms of the statute (R. S. art. 5222). To constitute such lien the check must constitute "money * * * furnished by the landlord to the tenant to make a crop on such premises"; and such lien "only attaches to the crop for the making of which such supplies [money]

were furnished." Lasater v. Streetman (Tex. Civ. App.) 154 S. W. 657; McMullen v. Green (Tex. Civ. App.) 149 S. W. 762; Walker v. Patterson's Estate, 33 Tex. Civ. App. 650, 77 S. W. 437.

■ We cannot regard the transaction as a furnishing of money to make the 1930 crop. If the Gillett check be regarded in any sense as money, it was furnished and used to satisfy the Talley check. No part of it was used, or expected or intended to be used, in making the 1930 crop. This was well understood by both parties, according to Talley's version, which must be accepted as correct for the purposes of review of the trial court's judgment. The agreement of the parties that a landlord's lien should be created could not alter the facts and transform into money furnished to make the 1930 crop that which was not in fact so furnished. And this is true regardless of the bona fides of the parties.

The case is altogether different in one all-important aspect from that of Guaranty Bond State Bank v. Redding (Tex. Civ. App.) 24 S.W.(2d) 457. There the tenant had the money to pay, and offered to pay, his indebtedness to the landlord; and it was agreed that the debt be canceled and the money used by the tenant to make the next year's crop. The holding in that case is in our opinion altogether sound; although, it might be noted that it is, we think, in conflict with the holding in Garden Valley Merc. Co. v. Falkner (Tex. Civ. App.) 189 S. W. 300.

■ The suggestion is made that the effect of the transaction was to release a landlord's lien upon machinery, feed, and cotton, which Talley was thereby enabled to use in making his 1930 crop.

There are at least two vices in this theory of recovery.

In the first place, there is no pleading to support it; the pleading being that "the true and real consideration for which the defendant, Talley, executed said promissory note was to obtain money to enable him to fulfill his said contract to prepare, plant, cultivate and gather said crops, and for the purchase of any and all necessary supplies for that purpose, and the said defendant did so obtain said money of plaintiff for such purposes, and which was necessary for those purposes, and received the full benefit thereof."

In the second place, the evidence does not show how much of the debt was carried forward from 1928, and consequently the amount of the landlord's lien on the 1929 crops; nor was there any showing of the amount or value of the property the lien on which is asserted to have been released.

The trial court's judgment is affirmed.

Affirmed.