**NOSKA v. MILLS.**

No. 12882.

Court of Civil Appeals of Texas. Dallas.

April 27, 1940.

Rehearing Denied May 25, 1940.

Edgar P. Haney and A. H. Dudek, both of Dallas, for appellant.

Francis M. Chaney, of Dallas, for appellee.

LOONEY, Justice.

Leo C. Mills sued Frank Noska, alleging that, on or about January 1, 1928, he rented to the defendant, for one year, fifty acres of land located about nine miles north of the City of Dallas, in Dallas County, Texas, agreeing to furnish everything except the labor, the defendant agreeing to furnish the labor; the parties to share equally the produce from the farm; also entered into a stock-raising agreement, to the effect that, plaintiff would furnish certain stock to be placed upon the farm and cared for by the defendant, the increase to be shared equally; that plaintiff furnished defendant one Jersey cow and several head of hogs (the number not mentioned); that, 'from year to year, the oral contract was renewed and the stock of the preceding year were furnished the defendant for milk, butter, meat, as food, and use in making the crop; 'that no division of the stock raised on the farm was ever made, and that, at the end of the year 1938, defendant had on the farm—raised under the alleged agreement—five Jersey cows, of the value of $40 each; two sows, of the value of $20 each; seven pigs, of the value of $5 each, and two calves of the value of $20 each, aggregating a total value of $315; that at the end of the year 1938, plaintiff made demand upon the defendant for half of said stock, which was refused, and the defendant still refuses to deliver to plaintiff one-half of the stock, to his damage in the sum of $157.50. Plaintiff also alleged that, for the year 1937, the federal government, under the provisions of an Act of the Congress, commonly called the "AAA", 7 U.S.C.A. § 601 et seq., paid to the defendant, as cotton subsidy, $81.11, of which plaintiff was entitled to one-half, but that the defendant appropriated the full amount of the money to his own use and benefit, to plaintiff's damage in the further sum of $40.55; alleging further that, by virtue of the said rental contract, and under the provisions of Art. 5222, R.C.S., Vernon's Ann.Civ.St. art. 5222, plaintiff was entitled to a landlord's lien, for the sum of $157.50, on the stock heretofore mentioned; concluding

with a prayer for judgment against the defendant for $198.05, and a foreclosure of his landlord's lien on the cattle and hogs, and, in the alternative, for one-half the stock and judgment for $40.55, and for general relief.

The defendant's answer contained a general denial, a denial of the existence of the lien; alleged that the cattle and hogs mentioned in plaintiff's petition were not the increase of the cow and hogs originally furnished by the plaintiff, but belonged exclusively to the defendant, and were exempt to defendant and his family; wherefore, he prayed that, the plaintiff take nothing (defendant also set up a cross-action against the plaintiff, but the issues arising in regard to same are not here involved).

The case was submitted on a general charge, and resulted in a verdict in favor of the plaintiff against the defendant for $150, for which amount the court rendered judgment in favor of plaintiff, reciting therein that, plaintiff had a landlord's lien to secure his debt, against the five Jersey cows, two black sows, seven pigs and two calves, being the stock mentioned in plaintiff's petition, and decreed foreclosure of said lien upon the cattle and hogs, ordering same sold as under execution, for the satisfaction of the judgment, cost, etc.; from which the defendant perfected this appeal.

By appropriate assignments and propositions, the defendant challenges the correctness of the judgment on the ground, generally, that the same is not supported by the evidence, and is contrary to the controlling rules of law.

■■ Although the evidence on the issues of fact is in irreconcilable conflict, yet, the jury having found for the plaintiff, it becomes our duty to give due weight and credit to all evidence sustaining the verdict and judgment, and reject all in conflict therewith. However, after a careful examination of the record, we are driven to the conclusion that, the evidence supporting the judgment (the testimony of the plaintiff) is entirely too indefinite and inconclusive to form a basis for same. Without reviewing the evidence in detail, we simply state our conclusions to be, that the testimony of the plaintiff on certain material phases of the case leaves so much to presumption and conjecture, we do not think it can be said with reasonable certainty that he showed himself entitled to any interest in the cattle, except one cow, being the heifer calf received in exchange for the male calf dropped by the original cow plaintiff turned over to the defendant; nor do we think plaintiff showed, with reasonable certainty, any interest in the hogs. These conclusions are reached, after giving weight and credit to plaintiff's testimony, without considering any conflicting evidence, and are based upon what we deem to be, the undisputed testimony of the defendant, his wife, and members of his family on phases of the case, in regard to which the plaintiff did not testify specifically, but left to conjecture and presumption. What we have just stated is based upon the record now before us, and is without prejudice to the right of plaintiff, on another trial, to prove his case as alleged.

■■ Does plaintiff have a landlord's lien on the cattle and hogs involved, under the provisions of Art. 5222, R.C.S., for whatever amount he may recover? We do not think so. Obviously, the rental contract and the stock-raising adventure were separate and distinct undertakings. The landlord's lien, created by statute, springs by operation of law from the relationship of landlord and tenant. Under the rental contract, the landlord was to furnish everything except the labor, the tenant agreeing to furnish that. In such a situation, the statute gives the landlord a preference lien on the crops grown on the premises for any rent that may become due, and for money, provisions, etc., furnished or caused to be furnished by the landlord to the tenant to make a crop on the premises and to gather and care for same; the money, provisions, etc., being necessary for that purpose. Plaintiff does not contend that he has not received his share of all crops grown on the premises, nor does he contend that the defendant is indebted to him for money, supplies, or provisions furnished to make a crop. So, in view of these undisputed facts, we do not think plaintiff's claim for damages, for the alleged conversion of his interest in the stock raised on the premises, under the alleged agreement between the parties, is secured by the statutory landlord's lien, as contended; nor do we think the amount, $81.11, paid the defendant by the federal government, as subsidy or bonus for idle land, can be assimilated to, or given the classification of, a crop grown upon the premises, within the meaning of the statute. Obviously, the amount paid by the federal government should have been

divided equally between the parties, but defendant's alleged conversion of plaintiff's half was just another instance of money had and received, for which plaintiff was entitled to judgment.

However, plaintiff insists that the court did not err in foreclosing the lien upon the stock, in view of an agreement between the parties, to the effect that, in the event the jury found any amount for plaintiff, the same shall be regarded as a lien upon one-half of the cattle and hogs.

The statement of facts contains an entry dictated by the court, reading: "It is agreed by and between the attorneys for the respective parties that in the event the jury finds for the plaintiff in any amount, said amount shall be agreed as a lien upon one-half of the livestock that is now alive." After reciting the agreement, the judgment proceeded to foreclose a landlord's lien upon the stock—not limited to one-half, but upon all the stock described in the pleadings.

The defendant made an effort, by motion, to have the entry in regard to the agreement expunged from the statement of facts, alleging that the same found its way into the statement of facts as the result of a mistake. However, as the court overruled the motion to expunge, the agreement will be considered for what it is worth.

As heretofore stated, we do not think plaintiff had a landlord's lien, under the provisions of Art. 5222, as contended. This being true, we do not think such a lien was created by the purported agreement between the attorneys. In Gillett. v. Talley, 60 S.W.2d 868, 870, Chief Justice McClendon, speaking for the Austin Court of Civil Appeals, said: "The parties could not, however, by agreement constitute that a landlord's lien, which, but for the agreement to that effect, would not constitute such lien. A landlord's lien arises by operation of law from facts which bring the transaction within the terms of the statute (R.S. art. 5222)."

■ It is generally recognized that an attorney of record is authorized to bind his client by agreements touching the remedy or management of the litigation; but, it is also well recognized that, it is beyond the province of an attorney to bind his client by an agreement that surrenders any substantial right. This doctrine was announced by Judge Speer, speaking for the Commission, approved by the Supreme Court, in Reynolds v. McMan Oil & Gas Co., 11 S.W.2d 778, 786: The opinion espoused and quoted with approval from 25 R.C.L., p. 1098, the following: "The implied authority of an attorney to make stipulations is ordinarily limited to matters of procedure in the management or prosecution of the action and in the absence of special authority, any stipulation which operates as a surrender of the substantial rights of the client will not be upheld by the courts." To the same effect, see 5 Tex. Jur. (subject, Attorneys at Law) Sec. 47, pp. 452–454; also, 5 Am.Jur. (subject, Attorneys at Law) Sec. 85, pp. 311, 312.

■ It follows therefore, that, in our opinion, the attorney was without authority, as such, to bind his client to the purported agreement recognizing the existence of a landlord's lien that, under the law, had no existence whatever; therefore, the foreclosure of a landlord's lien was erroneous. Besides, even if, by virtue of the agreement, the lien had an existence, it was only upon one-half of the stock, whereas, the foreclosure was upon the whole; hence, for that reason, the judgment was erroneous. In view of another trial of the case, will state that we think the stock-raising adventure of the parties, in legal effect, was simply a partnership, under which the parties were to share equally in the profits, and, on its dissolution and settlement, either party would be entitled to an equitable lien on any assets belonging to the partnership for whatever amount found to be due him; but this equitable lien would not exist upon any property other than the assets belonging to the partnership. See 47 C.J., sec. 877, p. 1183; O'Neal v. Jones, Tex.Civ.App., 34 S.W.2d 689.

For the reasons hereinbefore indicated, the judgment of the court below will be reversed and the cause remanded for further proceedings, without prejudice to the right of the parties as to any future litigation that may properly ensue.

Reversed and remanded.