A'drana Gooden JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–04–00307–CR.

Court of Appeals of Texas, Waco.

Nov. 9, 2005.

Walter M. Reaves, West, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted A'drana Gooden Johnson of aggravated assault for shooting her husband Wayne and assessed her punishment at eleven years' imprisonment and a $10,000 fine. Johnson contends in four points that the court erred by: (1) excluding evidence that Wayne had committed violent acts against a former spouse; (2) permitting the State to impeach her on a collateral matter first raised by the State; (3) admitting evidence at punishment regarding her admission to a hospital after the guilty verdict and regarding her conduct in jail once discharged from the hospital; and (4) failing to submit a reasonable doubt instruction with regard to evidence of extraneous conduct offered at punishment. We will affirm.

### Prior Violent Acts

■ Johnson contends in her first point that the court abused its discretion by excluding evidence that Wayne had committed acts of violence against a former spouse. The State responds that Johnson failed to preserve this issue for appellate review. We agree with the State.

Rule of Evidence 103(a)(2) provides that, if the trial court excludes evidence, a party may not complain of that ruling on appeal unless "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." Rule of Appellate Procedure 33.1(a)(1)(A) further requires the complaining party to "state[ ] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." "Additionally, it is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial." *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App.2004).

■ Thus, preservation of error with regard to the exclusion of evidence in-

volves a two-step process: (1) informing the trial court of the substance of the evidence sought to be admitted; and (2) informing the trial court of the legal grounds for the admission of the evidence. *See Willover v. State*, 70 S.W.3d 841, 845 n. 4 (Tex.Crim.App.2002) ("Whichever party complains on appeal about the trial judge's action must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question.") (quoting 1 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 103.2 (3d ed.2002)).

Here, Johnson sufficiently advised the trial court of the substance of the evidence she sought to admit when her attorney explained that he wanted to question Wayne about an allegation from a prior divorce proceeding that Wayne "had struck [his former wife] and had hit her in the stomach."

With regard to advising the trial court of the legal basis for admitting this evidence however, Johnson's appellate argument does not comport with her trial theory. At trial, Johnson argued that this evidence was admissible under article 38.36 of the Code of Criminal Procedure.[1] On appeal, Johnson argues that the evidence is admissible to show that the complainant was the first aggressor. *See Torres v. State*, 117 S.W.3d 891, 894 (Tex.Crim.App.2003).

Because Johnson's theory of admissibility on appeal is different than the theory of admissibility she pursued in the trial court, she has failed to preserve this issue for appellate review. *See Heidelberg*, 144

S.W.3d at 537. Accordingly, we overrule Johnson's first point.

### Impeachment on Collateral Matter

■ Johnson contends in her second point that the court abused its discretion by permitting the State to present evidence of the reason Johnson was terminated from a former job because this is a collateral matter first raised by the State.

■ "When a witness is cross-examined on a collateral matter, the cross-examining party may not then contradict the witness' answer. A matter is collateral if the cross-examining party would not be entitled to prove that matter as part of his case tending to establish his plea." *Shipman v. State*, 604 S.W.2d 182, 183–84 (Tex. Crim.App. [Panel Op.] 1980) (citations omitted). Conversely,

> when a defendant voluntarily testifies as to his prior criminal record without any prompting or maneuvering on the part of the State's attorney and in so doing he leaves a false impression with the jury, the State is allowed to correct that false impression by introducing evidence of the defendant's prior criminal record.

*Martinez v. State*, 728 S.W.2d 360, 362 (Tex.Crim.App.1987); *cf. Lopez v. State*, 928 S.W.2d 528, 531–32 (Tex.Crim.App. 1996) (evidence of prior misconduct inadmissible because State had prompted or maneuvered defendant into leaving false impression about his prior criminal history).

Thus, it has been held that "when a defendant voluntarily or nonresponsively testifies concerning extraneous matters on cross-examination, the State may correct any false impression presented by such

1. Article 38.36 applies to "prosecutions for murder" and allows for the admission of "testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX.CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon 2005).

answer." *Roberts v. State,* 29 S.W.3d 596, 601 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *accord Mills v. State,* 847 S.W.2d 453, 456–57 (Tex.App.-Eastland 1993, pet. ref'd); *Burrow v. State,* 668 S.W.2d 441, 443 (Tex.App.-El Paso 1984, no pet.).

Here, the State presented testimony that the handgun with which Johnson shot Wayne had been stolen in November 2001. Wayne testified that Johnson acquired the handgun "while she was working at the pawnshop" but that she did not purchase it "through the pawnshop."

During the State's cross-examination of Johnson, the prosecutor asked her when she worked at the pawnshop. She replied that she worked there "when [she] first got married" to Wayne.[2] When asked how long she worked there, she replied, "Maybe two months, three months until my husband—they got kind of upset because my husband would be on my job every day." The prosecutor asked Johnson four additional questions about her statement that Wayne was the reason she lost her job. The prosecutor then asked her whether she bought the handgun in the pawnshop parking lot so it wouldn't be traced to the pawnshop. Johnson denied this. After this, the prosecutor moved on to another line of questioning.

In rebuttal, the State called the pawnshop owner to testify about the reason Johnson's employment was terminated. The owner testified over objection that Wayne came to the store only twice, that he never caused any problems at the pawnshop, that he had nothing to do with the termination of Johnson's employment, and that Johnson's employment was terminated because she declined to do all the "chores" assigned to her.

Johnson contends that the State's cross-examination of her focused on a collateral matter (the termination of her employment at the pawnshop) and was intended to prompt or maneuver her into leaving a false impression with the jury about the reason her employment was terminated. The State responds that the cross-examination was a proper attempt to connect Johnson to the handgun and that the pawnshop owner's testimony was properly admitted because Johnson voluntarily and nonresponsively testified about the reason her employment was terminated without prompting or maneuvering.

We agree with Johnson that the State's cross-examination *could be* construed as an effort to maneuver her into leaving a false impression about the reason her employment with the pawnshop was terminated. The fact that the prosecutor asked Johnson four additional questions in an apparent attempt to solidify her testimony on this admittedly collateral matter lends further support to this interpretation.

However, the record also supports the State's assertion that this line of questioning was an attempt to connect Johnson to the handgun used in the crime. This line of questioning began with the testimony of the person from whom the handgun had been stolen. It continued with Wayne's testimony that the handgun did not belong to him and that Johnson had obtained it while working at the pawnshop, though not "through the pawnshop." Finally, the State established through cross-examination of Johnson that she worked at the pawnshop at about the same time the handgun was stolen, though she denied purchasing it.

■ We will affirm a trial court's evidentiary ruling if it lies within "the zone of reasonable disagreement." *See State v.*

2. Wayne testified that they married in September 2001.

*Mechler,* 153 S.W.3d 435, 440 (Tex.Crim. App.2005). We have identified two reasonable interpretations of the State's purposes for cross-examining Johnson about her employment at the pawnshop. The latter interpretation represents a wholly appropriate line of inquiry, relevant to the issue of whether the handgun belonged to Johnson, which is ultimately relevant to the issue of whether Wayne first threatened Johnson with the handgun or whether she was the first to employ deadly force.

Under this interpretation of the evidence, the State was not attempting to prompt or maneuver Johnson into testifying about the termination of her employment at the pawnshop, and Johnson's response was voluntary and nonresponsive to the prosecutor's question. Thus, we cannot say that the trial court's decision to permit the State to impeach Johnson regarding this matter lay outside "the zone of reasonable disagreement." *See Roberts,* 29 S.W.3d at 601; *Mills,* 847 S.W.2d at 456–57; *Burrow,* 668 S.W.2d at 443. Accordingly, we overrule Johnson's second point.

### Punishment Evidence

■ Johnson contends in her third point that the court abused its discretion by admitting evidence at punishment regarding her admission to a hospital after the guilty verdict and regarding her conduct in jail once discharged from the hospital.

Article 37.07, section 3(a)(1) of the Code of Criminal Procedures provides for the admission during the punishment phase of

> any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules

of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible. . . .

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2005).

Here, the court admitted evidence that Johnson was found in a park and taken to a local hospital on the same morning that the punishment phase of her trial was scheduled to begin. She was treated at the emergency department and returned to the jail. The treating physician testified that she appeared nonresponsive when she was brought in by ambulance. He ran a series of tests and concluded that there was nothing wrong with her and that she was malingering.

Johnson was placed under observation in the jail. A jailer testified that, on the morning her punishment phase was to recommence, he came to her cell to notify her that she needed to get ready. A few moments later when he was observing her on a video monitor to be sure she did not fall, he saw her get up from her bed, walk across the cell to a sink, brush her teeth, then return to the bed without assistance.

Another jailer testified that, when he brought a wheelchair to transport Johnson to the courtroom, she nearly fell as she tried to get into the wheelchair. A female jailer and he had to dress Johnson because "[s]he couldn't do anything." This jailer concluded by testifying that, after Johnson was taken by wheelchair to a room near the courtroom, she was able to walk into the courtroom without any assistance.

■ Johnson filed an application for community supervision. Evidence of her willingness to comply with court orders (*i.e.,* to appear in court as scheduled) is relevant to the issue of whether she would

comply with community supervision orders. *See Najar v. State*, 74 S.W.3d 82, 87–88 (Tex.App.-Waco 2002, pet. dism'd) (evidence of suitability for community supervision is relevant when the defendant has filed an application for community supervision); *Peters v. State*, 31 S.W.3d 704, 719 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (same).

Accordingly, we hold that the court did not abuse its discretion by admitting evidence regarding Johnson's hospitalization and her subsequent conduct at the jail. Thus, we overrule Johnson's third point.

### Reasonable Doubt Instruction

 Johnson contends in her fourth point that she suffered egregious harm because the court failed to instruct the jury that it could not consider evidence of extraneous crimes or bad acts unless such crimes or bad acts were shown beyond a reasonable doubt.

Article 37.07, section 3(a) requires such an instruction in the punishment charge regardless of whether the defendant requests it or objects to its omission. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim.App.2000). Because Johnson did not request such an instruction or object to its omission, she must show egregious harm. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004).

Texas courts have concluded that egregious harm has not been shown because of the omission of a reasonable doubt instruction when: (1) the defendant did not challenge the sufficiency of the evidence connecting him to the extraneous conduct at trial and/or on appeal; *see McClenton v. State*, 167 S.W.3d 86, 98 (Tex.App.-Waco 2005, no pet.); *Bolden v. State*, 73 S.W.3d 428, 432 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); *Arnold v. State*, 7 S.W.3d

832, 835 (Tex.App.-Eastland 1999, pet. ref'd); (2) the evidence connecting the defendant to the extraneous conduct is "clear-cut"; *see Allen v. State*, 47 S.W.3d 47, 52–53 (Tex.App.-Fort Worth 2001, pet. ref'd); and (3) the punishment assessed is at the low end or in the middle of the available punishment range and/or significantly less than sought by the prosecution; *see Tabor v. State*, 88 S.W.3d 783, 789 (Tex.App.-Tyler 2002, no pet.); *Bolden*, 73 S.W.3d at 432; *Allen*, 47 S.W.3d at 53; *Arnold*, 7 S.W.3d at 835.[3]

The evidence of extraneous conduct at issue here consists of: (1) Johnson's "manipulation of her medical condition" (as stated in her brief); (2) a hospital lab test result showing that Johnson had marihuana in her system when she was hospitalized; and (3) a test result showing that her blood alcohol concentration was 0.03 grams when she was hospitalized.

With one exception, Johnson did not cross-examine the State's witnesses who presented testimony about her hospitalization and subsequent conduct at the jail. Each of the witnesses positively identified Johnson as the person about whose conduct they were testifying. Johnson did not and does not challenge the accuracy of the test results. Her trial counsel briefly cross-examined the emergency department physician about his failure to seek a psychiatric evaluation. Although the State placed great emphasis on the extraneous conduct in its closing argument, Johnson's counsel did not mention it. The prosecutors both asked the jury to assess the maximum punishment of twenty years. As indicated however, the jury assessed punishment at eleven years.

Therefore, because Johnson did not challenge the sufficiency of the evidence connecting her to the extraneous conduct

---

**3.** This listing is not intended to be exhaustive.

at trial and does not on appeal, because the evidence connecting her to the extraneous conduct is "clear-cut," and because her sentence is in the middle of the available punishment range and almost half that sought by the prosecution, we conclude that she did not suffer "egregious harm" from the court's failure to include a reasonable doubt instruction in the punishment charge. *See McClenton,* 167 S.W.3d at 98; *Tabor,* 88 S.W.3d at 789; *Bolden,* 73 S.W.3d at 432; *Allen,* 47 S.W.3d at 52–53; *Arnold,* 7 S.W.3d at 835. Accordingly, we overrule Johnson's fourth point.

We affirm the judgment.

Chief Justice GRAY concurring in the result without a separate opinion.