COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-08-058-CR 



 

JAMES SANDERS                                                                APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

              FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                          ------------

I.  Introduction

In three points, Appellant James Sanders appeals his life
sentence for two counts of aggravated robbery that will run consecutively with
a three-hundred-month federal sentence.[2]  We modify the judgment and affirm as
modified.








II.  Factual and Procedural History

A. The Convictions for Aggravated
Robbery       

On November 12, 2006, Appellant robbed two
employees at a Domino=s Pizza in Lewisville, Texas.  Brian Kennedy, the assistant manager on duty
that night, saw Appellant, wearing a Ahoody@ and some sort of
mask covering his lower face, push Scott LathamCan employee who
was leaving the buildingCback through the door as he entered the
building.  Appellant pointed a pistol at
another employee and demanded money. 
When the employee informed Appellant that there was no cash register at
her counter, he walked around the counter to verify, then demanded money from
Kennedy.  Kennedy surrendered a bank bag
and all of the money in the safe. 
Appellant left with approximately $1,600 in cash and checks.  Appellant was indicted for two counts of
aggravated robbery.  The jury found
Appellant guilty of both counts following his guilty plea. 

B. Evidence of Other Crimes and Bad Acts








During the punishment phase, the jury heard testimony from
the State=s witnesses and Appellant about the two
aggravated robberies at Domino=s and about
Appellant=s other crimes and bad acts.  Appellant admitted that he was convicted of
several counts of aggravated robbery with a firearm in 1994, resulting in his
incarceration until 2002.[3]  He admitted that he served the full prison
sentence because of his poor conduct while in prison. 

With regard to an aggravated sexual assault charge pending
in Dallas County at the time of Appellant=s punishment
trial, which, according to Appellant, led to his subsequent crime spree,
Appellant testified that on December 28, 2005, he had consensual sex with a
woman in an apartment complex laundry room. 
He testified that another woman walked in, saw them, and left, and then
he immediately left because the complainant told him to.  The police arrested Appellant at his
apartment several hours later.  Detective
Johnson of the Irving Police Department testified about his investigation of
this incident, but neither the complainant nor the witness testified during
Appellant=s punishment trial.  Appellant denied committing any offense.








After Appellant was released on bond for the aggravated sexual
assault charge, police arrested him for unlawful restraint, an offense he also
denied committing.  Appellant=s bond insurer
revoked his bond, and Appellant spent approximately six and one-half months in
jail.  When he was again released on
bond, Appellant testified that he was forced to sell his car to retain an
attorney.  Appellant further testified
that stress and the need for money to support his family and to pay his attorney
caused him to commit a series of crimesCincluding the
eighteen robberies to which he admittedCin November
2006.  

During the punishment phase, the jury also heard testimony
regarding another attack, which Appellant did not deny committing.  A.G. testified that, on November 8, she was
walking home from a store when Appellant grabbed her and pushed her into a blue
car.  A.G. struggled to get out of the
car while Appellant repeatedly stabbed her with a screwdriver.  Appellant parked the car in a secluded area
and told A.G. in Spanish that he wanted to rape her.  A.G. testified that she feared for her life
as Appellant stabbed her in her head, chest, ribs, and throat.[4]  A.G. lost consciousness and woke up in a
closed garbage dumpster.  Appellant
claimed he could not recall the incident, but he never denied it or attempted
to cast doubt on A.G.=s testimony.  He also claimed that he Asnapped@ and Ahad some type of
nervous breakdown@ from the stress of the aggravated sexual
assault allegation and that this attack was the result.[5]









The jury heard
testimony that on November 12Cthe same day that
Appellant robbed the Domino=s Pizza employeesCAppellant robbed the
receptionist at the Denton Quality Inn by pointing a gun at her and demanding
money.  On November 14, Appellant robbed
Allison Scott at gunpoint in front of North Texas Vision in Lewisville.  Appellant, wearing a mask and a hood, grabbed
Scott=s purse as she was
about to enter the store and ordered her to give him the purse.  Scott initially refused, but she complied
when Appellant pointed a gun at her head.

On November 15,
Appellant robbed an employee at the Lewisville Easy Loan.  An employee saw Appellant walking towards the
building in a black Ahoody@ with a white rag
covering his lower face; believing Appellant was a robber, the employee pressed
the panic button before Appellant even entered the building.  At gunpoint, Appellant took all the money
from the cash registers and the safe and then left.  Appellant admitted to committing this
robbery. 








On November 16,
Appellant, wearing a Ablack squiggly wig,@ robbed three
employees at the Lewisville Security Finance Loan office.  At gunpoint, Appellant demanded money from
the three employees; he left with $883 in a black plastic bag.  Appellant also admitted to committing this
robbery.

Lewisville Police
Officer Jay Alexander was on patrol the night of November 17 and early morning
of November 18 when he saw a blue car in a motel parking lot that matched the
description of a car wanted by the Carrollton Police Department.  Officer Alexander reported the car=s vehicle
identification number and learned that it was the car that Carrollton police
wanted, that it was Appellant=s car, and that a
warrant had been issued for his arrest. 
Other Lewisville officers arrived and arrested Appellant in his motel
room on the warrant.[6]








At trial, Dallas
Detective Brent Maudlin testified that on November 20, 2006, he questioned
Appellant at the Lewisville Police Department Headquarters about a series of
robberies that occurred in Dallas over the previous two weeks.  Appellant admitted to committing twelve
robberies in Dallas.[7]  During the interview, Appellant ran out of
the room and attempted to escape. 
Appellant admitted that this was his first of three escape attempts
following his November 2006 arrest.  His
second attempt occurred in March 2007, when he attempted to run away after
exiting a transport van in leg shackles. 
He quickly fell to the ground, and officers secured him.  Appellant=s third escape
attempt occurred in June 2007 at the Denton County Jail when he threw cleaning
fluid into a police officer=s eyes and ran out
of his cell and down the hallway.[8]  The officer chased Appellant and tackled him
three times, but each time Appellant broke free.  Appellant was finally subdued with the help
of three other officers. 








By the end of the
punishment phase of this trial, Appellant admitted to at least eighteen
aggravated robberiesCincluding the incidents described aboveCa 1994 conviction
for seven counts of aggravated robbery with a firearm, a federal conviction for
possession of a firearm by a felon for which he was already serving a
twenty-five-year sentence, and three escape attempts.  Further, he did not deny the aggravated
kidnaping and screwdriver attack on A.G. and did not attempt to discredit her
testimony.  Appellant did, however, deny
the aggravated sexual assault and unlawful restraint allegations. 

Before the trial,
the State filed a motion to cumulate sentences but did not identify the
sentence to be cumulated with the sentence to be imposed for the two counts of
aggravated robbery.  After the jury
assessed life imprisonment but before the trial court sentenced Appellant,[9]
the State verbally requested that the life sentence be stacked on top of the
federal sentence that Appellant was serving at the time of trial.  The trial court granted the State=s motion and
included the stacking order in the judgment. 
This appeal followed.

III.  Motion for Mistrial

In his first
point, Appellant argues that the trial court abused its discretion by not
granting his motion for mistrial after the trial court sustained his objection
to an improper argument by the State during closing arguments and instructed
the jury to disregard that argument.

A. 
Standard of Review








To be proper, a
jury argument must fall within one of the following four general areas:  (1) summation of evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; or (4)
plea for law enforcement.  Felder v.
State, 848 S.W.2d 85, 94B95 (Tex. Crim.
App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State,
493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  

When the trial
court sustains an objection and instructs the jury to disregard an improper
argument but denies a defendant=s motion for a
mistrial, the issue is whether the trial court abused its discretion by denying
the mistrial.  Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004). 
Only in extreme circumstances, when the prejudice caused by the improper
argument is incurable, i.e., Aso prejudicial
that expenditure of further time and expense would be wasteful and futile,@ will a mistrial
be required.  Id.; see also
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert.
denied, 542 U.S. 905 (2004).  In
determining whether the trial court abused its discretion by denying the
mistrial, we balance three factors: (1) the severity of the misconduct; (2)
curative measures; and (3) the certainty of the punishment assessed absent the
misconduct.  Hawkins, 135 S.W.3d
at 77; Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op.
on reh=g), cert.
denied, 526 U.S. 1070 (1999).              








When evaluating
the severity of the misconduct, an appellate court will not reverse the trial
court except for extreme cases in which the argument is manifestly improper,
harmful, and prejudicial; a mandatory provision of a statute is violated; or
the improper argument injects new and harmful facts into the case.  Hawkins, 135 S.W.3d at 81.  The error is more severe, and hence more
likely to lead to a reversal, if the error is repeated and not isolated.  Id. at 83, 85.  When analyzing the second prongCcurative measuresCappellate courts
may consider the exact objection and instruction to determine how effective the
instruction was in explaining what exactly the jury should do, any
self-correcting measures the State took, and the jury charge.  Id. at 84.  In most cases, the instruction from the trial
court will cure any harm.  Id.  In evaluating the final factorCcertainty of
punishmentCappellate courts determine whether the
same punishment would be assessed without the improper argument.  Id. at 77.  

B. 
Analysis          

Appellant
complains of the following argument made by the State during its closing
argument in the punishment phase of the trial: 

[State]: Everything this man has done, 18 robberies,
an unlawful restraint, aggravated sexual assault, aggravated kidnaping, that is
a life sentence on the installment plan.  








[Defense]: Your Honor, I=m going to object to the argument
of the aggravated sexual assault.  That=s still a pending case and he=s denied it.

 

[Trial Court]: Sustained.

 

[Defense]: I=d ask the jury be instructed to
disregard.

 

[Trial Court]: That portion of the
argument I=ll instruct the jury to disregard
and not consider for any purpose.

 

[Defense]: And move for a mistrial.

 

[Trial Court]:
Denied.  

[State]: Everything he has pled to,
that aggravated kidnaping, that=s a life sentence on the installment plan.  It=s one thing right after the other.  He needs to be put in check, and the only way
you can stop him is with a life sentence.

 








Appellant contends
that the instruction to disregard was insufficient to cure the harm.  However, despite Appellant=s argument that
the State=s inclusion of the aggravated sexual assault
under the umbrella of Aeverything this man has done@ was manifestly
improper, we disagree.  Although
improper, the comment did not violate a mandatory statutory provision or inject
new and harmful facts into the case.  The
jury had already heard testimony from the investigating detective, Appellant,
and Appellant=s attorney regarding the allegation.  Moreover, our review of the record shows that
the State=s misconduct was an isolated event and
that it did not happen again.  Thus, the
severity of the improper comment is lessened and does not amount to being Amanifestly
improper@ as Appellant
contends.  See Hawkins, 135 S.W.3d
at 83.           In analyzing the curative
measures taken, the record reflects that defense counsel=s objection
alerted the jury that Appellant was specifically objecting to the State=s inclusion of the
aggravated sexual assault as part of A[e]verything
[Appellant] has done.@ 
The trial court granted Appellant=s requested
instruction, and in doing so, clearly and promptly identified the offending
phrase and what action the jury should take. 
Therefore, the trial court=s curative measure
was effective to cure any harm resulting from the State=s improper
argument.  See id. at 84 (noting
that when trial counsel asks for a certain instruction and the trial court
gives that instruction to the jury, that instruction is considered effective to
cure any harm in most cases, and noting that curative measures are more likely
to cure harm when they clearly identify the error).  








Moreover, any harm
resulting from the improper comment was further cured when the State corrected
itself by saying Aeverything he pled to@ immediately after
the trial court instructed the jury to disregard the State=s initial comment.
Id. (noting that a prosecutor=s self-corrective
action Ais a relevant
consideration in determining harm and can, in the appropriate circumstances,
render an improper comment harmless@).  Thus, the jury knew that the State was asking
them to consider the extraneous offenses that Appellant pleaded toCrather than
everything Appellant Ahas done@Cand therefore, we
hold that the curative measures were effective to minimize any harm resulting
from the improper comment. 








Furthermore, after
conducting a review of the entire record, we determine that Appellant=s punishment was
certain, even absent the State=s improper
comment.  First, the jury could have
considered numerous other violent acts that Appellant committed and admitted to
that overshadowed the aggravated sexual assault allegation.  See id. at 85 (noting that the number and
nature of other crimes is a relevant factor in whether or not the same
punishment would have been assessed without the improper argument).  Second, the jury heard testimony from the investigating
detective, Appellant=s own testimony regarding the alleged
aggravated sexual assault, Appellant=s attorney=s argument
referring to the incident, and the State=s reference to the
allegation later in its closing argument. 
Therefore, even if the State had not made the improper reference, the
jury would still have been influenced by the other references to the aggravated
sexual assault allegation that were not objected to or found to be improper by
the trial court.  Finally, in its closing
argument, the State told the jury that Appellant was eligible for a life
sentence for each aggravated robbery and for the aggravated kidnaping, and
Appellant did not object to or rebut this argument.  Thus, even if the jury totally disregarded
the aggravated sexual assault allegation, it would have assessed the same
punishment.

In balancing the severity of the misconduct, the curative
measures, and the certainty of the punishment assessed absent the misconduct,
we hold that the trial court did not abuse its discretion by denying the motion
for mistrial.  The argument, although
improper, was an isolated incident.  The
objection and trial court=s instruction to disregard were prompt and
clear, and the State quickly corrected itself. 
Also, the number and nature of the crimes that Appellant committed were
a more likely reason for the punishment than the improper argument, and any
influence that the aggravated sexual assault allegation may have had over the
jury could just as easily have come from the other references made by Appellant
and his counsel rather than from the State=s improper
argument.  See id. at 81B85.  Therefore, we overrule Appellant=s first point.

IV.  Jury Charge Error

In his second point, Appellant argues that the trial court
erred when it failed to charge the jury with respect to the State=s burden of proof
regarding unadjudicated extraneous offenses and bad acts. 

A.  Standard of Review








Appellate review
of error in a jury charge involves a two‑step process. Abdnor v. State,
871 S.W.2d 726, 731 (Tex. Crim. App. 1994). 
Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient
harm resulted from the error to require reversal.  Id. at 731B32.  If there is error in the court=s charge but the
appellant did not object to it at trial, we must decide whether the error was
so egregious and created such harm that appellant did not have a fair and
impartial trialCin short, that Aegregious harm@ has
occurred.  See Tex. Code Crim.
Proc. Ann. art. 36.19 (Vernon Supp. 2008); Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996); Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g).  Jury charge error is egregiously harmful if
it affects the very basis of the case, deprives the defendant of a valuable
right, or vitally affects a defensive theory. 
Stuhler v. State, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); Hutch,
922 S.W.2d at 171.








When examining the
record to determine whether jury-charge error is egregious, the reviewing court
should consider the entirety of the jury charge itself, the evidence, including
the contested issues and weight of the probative evidence, the arguments of
counsel, and any other relevant information revealed by the record of the trial
as a whole.  Stuhler, 218 S.W.3d
at 719; Bailey v. State, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); Almanza,
686 S.W.2d at 171.  The purpose of this
review is to illuminate the actual, not just theoretical, harm to the
accused.  Almanza, 686 S.W.2d at
174.  Egregious harm is a difficult
standard to prove and must be determined on a case‑by‑case basis. Ellison
v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch, 922
S.W.2d at 171; Schiffert v. State, 257 S.W.3d 6, 11 (Tex. App.CFort Worth 2008,
pet. dism=d). 
Errors resulting in egregious harm are those that affect the very basis
of the case, deprive the defendant of a valuable right, or vitally affect a
defensive theory.  Hutch, 922
S.W.2d at 171. 

B. Presence of
Error








The jury charge
failed to include an instruction that the jury must find beyond a reasonable
doubt that Appellant committed the extraneous offenses before considering those
offenses in determining Appellant=s punishment.[10]  Failure to sua sponte give a reasonable doubt
instruction at punishment regarding extraneous offense evidence is error
subject to the Almanza harm analysis.[11]  See Huizar v. State, 12 S.W.3d 479,
484B85 (Tex. Crim.
App. 2000) (op. on reh=g); Almanza, 686 S.W.2d at
171.  

 

C. Egregious Harm

Appellant failed
to object to the trial court=s failure to
include the reasonable doubt instruction; therefore, we must decide whether the
error was so egregious and created such harm that Appellant did not have a fair
and impartial trialCin short, whether Aegregious harm@ occurred.  See Tex. Code Crim. Proc. Ann. art
36.19; Hutch, 922 S.W.2d at 171; Almanza, 686 S.W.2d at 171.  In his appeal, Appellant argues
that he suffered harm from the erroneous jury charge only with regard to the
aggravated sexual assault offense.[12]  Accordingly, we limit our review to this
specific issue.

1. Jury Charge








In reviewing a
case for egregious harm, we first look at the jury instructions as a
whole.  Hutch, 922 S.W.2d at 171.  In certain instances, harm resulting from the
absence of a burden of proof instruction for a particular issue may be avoided
where the general jury instructions regarding the burden of proof were
sufficient to alert the jury as to the requisite burden of proof.  See Olivas v. State, 202 S.W.3d
137, 146B47 (Tex. Crim.
App. 2006). 

In this case, the charging document did not instruct the
jury that it must determine that Appellant committed the extraneous offenses
beyond a reasonable doubt before considering those offenses in assessing
punishment.  In looking at the jury
instructions as a whole, the jury charge on punishment tells the jury to find
as true the allegation of Appellant=s prior conviction
for aggravated robbery, lists the range of punishment, explains the duty to
assess punishment, and advises the jury to consider Aall of the facts
shown by the evidence admitted . . . in the full trial of this case and the law
submitted . . . in this charge.@ 








Because the
charging document failed to instruct the jury regarding the burden of proof on
the extraneous offenses, and because the jury was instructed to consider Aall facts shown by
the evidence admitted@Cwhich necessarily
included Detective Johnson=s testimony
regarding his investigation of the aggravated sexual assaultCthe jury may have
considered the aggravated sexual assault offense in its assessment of
punishment without knowing that it had to first find that Appellant committed
that offense beyond a reasonable doubt.  See
Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (noting that a
presumption exists that a jury follows the jury instructions).  As a result, it is possible that some jurors
may have considered the offense improperly because of the charging
document.  Therefore, we cannot say that
any harm from the omission of the instruction is removed or lessened by the
jury charge as a whole.  See Olivas,
202 S.W.3d at 146B47. 

2. State of the
Evidence

Under the second
factor of the Almanza egregious harm test, we consider the weight of the
probative evidence and the contested issues. 
See Almanza, 686 S.W.2d at 171. 
Egregious harm does not result from omitting a burden of proof
instruction in the jury charge when the evidence presented to the jury would
support a finding in accordance with the appropriate burden of proof.  See Olivas, 202 S.W.3d at 147.  For example, there is no egregious harm if
the issue is uncontested or if the State presented sufficient evidence to
support a jury finding beyond a reasonable doubt.  See id.








Here, the evidence
presented at trial could not support a jury finding that Appellant committed
aggravated sexual assault beyond a reasonable doubt because the only evidence
of the crime was Appellant=s testimony that
he and the complainant had consensual sex. 
See Johnson, 181 S.W.3d at 767. 
The bulk of the evidence that the State presented at the punishment
trial did not concern the alleged aggravated sexual assault; rather, it
concerned the two counts of aggravated robbery upon which this appeal is based,
the other aggravated robberies Appellant committed in November 2006, the
aggravated kidnaping and screwdriver attack, and Appellant=s three escape
attempts.  Although an Irving detective
briefly testified for the State regarding his investigation of the alleged aggravated
sexual assault, he did not testify about the facts of the incident itself, and
the trial court sustained defense counsel=s objections
whenever the detective=s testimony went beyond the steps he took
in his investigation.  Further, the
complainant did not testify nor did any other witness to the incident except
for Appellant.

Nor was the
aggravated sexual assault issue uncontested. 
Appellant denied committing the offense. 
Therefore, based on the evidence presented, we cannot say that the error
in omitting the burden of proof instruction was harmless because the aggravated
sexual assault was not uncontested and the State did not present sufficient
evidence to support a jury finding beyond a reasonable doubt.  See Olivas, 202 S.W.3d at 148; Yates,
917 S.W.2d at 923. 

3. Arguments of
Counsel








The next factor in
our analysis is the jury argument.  If
either attorney properly instructed the jury about the appropriate burden of
proof in his or her argument, then there is no egregious harm from the jury
charge error.  See Olivas, 202
S.W.3d at 148 (finding that any harm caused by a jury charge that lacks a
burden of proof instruction is lessened when the defense counsel correctly
instructed the jury on the burden of proof issue).  Although neither side in this case discussed
the burden of proof regarding extraneous offenses, the State argued that it
could impose a life sentence for each of the aggravated robberies.  Because the State informed the jury that it
had the power to impose a life sentence without even considering the aggravated
sexual assault allegation, it is unlikely that the charge error changed the
outcome and deprived Appellant of a valuable right.  See Hutch, 922 S.W.2d at 171. 

          4.
Other Relevant Information

Jury charge error
is not egregious when the issue involved in the erroneous jury charge is not a
central issue in the case.  Id. at
166.  Although both sides addressed the
aggravated sexual assault allegation in their arguments and cases-in-chief,
neither side heavily focused on whether or not Appellant committed the
aggravated sexual assault.  Instead, the
parties focused on Appellant=s admissions with
regard to his other offenses.  Therefore,
we cannot say that it was a crucial issue in the case.  Id.








Furthermore, we
also may consider the severity of the punishment assessed, which may indicate
egregious harm in some situations.  See
Bolden v. State, 73 S.W.3d 428, 432 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d). 
In this case, Appellant received a life sentence, the maximum allowed,
However, a maximum punishment alone does not indicate egregious harm.  See Huizar, 29 S.W.3d at 251.  One important consideration is whether the jury
would have imposed the same punishment even if it had been properly
instructed.  Allen, 253 S.W.3d at
267B68.  In other words, there is no egregious harm if
the jury would still have assessed a life sentence even if properly instructed
to consider only extraneous offenses if they first found that he committed
those offenses beyond a reasonable doubt. 
See id.








The record shows
that Appellant admitted to eighteen aggravated robberies during which he
threatened people with a firearm, sometimes by pointing it at the victim=s head.  He was previously convicted of aggravated
robbery and served his full prison sentence because, as he admitted, he was not
a model prisoner.  He did not deny that
he physically forced a woman into his car, threatened to rape her, tried to
pull her pants down, stabbed her repeatedly with a screwdriver, and threw her
in a closed garbage dumpsterCan attack for
which she was hospitalized for over five weeks. 
His only excuse for his actions was that he needed money for his family
and his legal defense, yet this justification was undermined by the State=s presentation
evidence that Appellant used the money for unnecessary luxury items, like the
$1,500 tire rims.  Further, Appellant
admitted that he attempted to escape three times following his arrest and threw
cleaning solution into the eyes of a jail guard during one of those
attempts.  Finally, the State argued to
the jury that it could impose a life sentence for each of the aggravated
robberies without objection or rebuttal from Appellant=s trial
counsel.  Thus, even if the jury had been
properly instructed, it would have reached the same result due to the
overwhelming evidence and nature of so many other bad acts that would justify a
life sentence.  If only one extraneous
offense is contested, the lack of a burden of proof instruction does not create
egregious harm when numerous other extraneous offenses are presented to the
jury.  See Yates, 917 S.W.2d at
924. 

After reviewing
the trial record as a whole, we cannot conclude that Appellant was denied a
fair and impartial trial.  Although some
harm may have resulted from the error, it was not egregious harm because the
State presented overwhelming and uncontested evidence of many other violent
acts for the jury to consider that justified a life sentence and nothing
indicates that the aggravated sexual assault was heavily considered by the jury
or that it was a critical issue in the trial. 
See Allen, 253 S.W.3d at 266; Yates, 917 S.W.3d at 923; Almanza,
686 S.W.2d at 171.  Therefore, we
overrule Appellant=s second point.

V. Cumulation
Order








In his third
point, Appellant argues that the cumulation order stacking his life sentence on
top of the federal sentence he was already serving is defective and should be
voided because the stacking order in the judgment does not contain sufficient
information to identify the earlier sentence.

A.  Standard of Review

The decision to
run multiple sentences concurrently or cumulatively is at the discretion of the
trial court.  Tex. Code Crim. Proc. Ann.
art. 42.08 (Vernon 2006); Stokes v. State, 688 S.W.2d 539, 540 (Tex.
Crim. App. 1985).  A cumulation order
must be specific enough that prison authorities know how long to detain the
prisoner.  Stokes, 688 S.W.2d at
540.  The Texas Court of Criminal Appeals
has identified five elements for a valid cumulation order:  (1) the cause number of the prior conviction;
(2) the correct name of the trial court where the conviction was taken; (3) the
date of the prior conviction; (4) the term of years of the prior conviction;
and (5) the nature of the prior conviction. Id.; Ward v. State,
523 S.W.2d 681, 682 (Tex. Crim. App. 1975). 
However, not all elements are necessary for a cumulation order to be
valid, so long as the earlier sentence with which the latest sentence will be
cumulated can be properly identified.  Stokes,
688 S.W.2d at 540.  








The order should
be sufficiently clear so that it may be understood without having to refer to
other evidence.  Id.  When a cumulation order is not sufficiently
clear, an appellate court may reform the order and affirm as modified if the
record reveals all information required to reform it.  Banks v. State, 708 S.W.2d 460, 462 (Tex.
Crim. App. 1986).  

 

B.  Analysis

The cumulation
order from the trial court is as follows: AThe sentence
imposed under F-2007-0057-E (COUNTS I AND II)[13]
shall commence when the sentence imposed in cause number 4:06CR0291-001 out of
the US District Court, ceases to operate. 
The sentences shall run consecutively.@  Appellant argues that the cumulation order is
insufficient because it identifies only the cause number of the earlier
sentence, and thus fails to adequately identify that sentence.  The State admits that the trial court did not
adequately identify the earlier sentence and requests that this court modify
the judgment to properly identify the earlier sentence.








An order that includes only the cause number of the earlier
sentence may still be sufficient if the order is entered in the same court as
the earlier sentence, if the order also states the correct name of the trial
court, or if the order has other descriptive elements.  Williams v. State, 675 S.W.2d 754, 764
(Tex. Crim. App. 1984) (op. on reh=g).  A cumulation order will be upheld if it is
specific enough to give notice to the prison officials and the defendant of
exactly which sentence the newest sentence will be cumulated with.  Id. 


The trial court=s cumulation order
is not sufficient to give adequate notice in this case.  The only element it fully meets is that it
includes the proper cause number.  See
Stokes, 688 S.W.2d at 540. 
Although it does state that the conviction came from the U.S. District
Court, it does not state which district, and therefore does not present a
proper court name.  Id.  The State does not contest Appellant=s argument that
the cumulation order is insufficient and admits that the identification Ais rudimentary at
best.@  Therefore, we find that the cumulation order
is not specific enough to provide notice to prison officials of which sentence
is to be cumulated.  Id.  

A court of appeals
has the power to modify a trial court=s judgment and to
affirm it as modified.  Tex. R. App. P.
43.2(b).  An appellate court may reform a
cumulation order if the necessary information is in the record.  Banks, 708 S.W.2d at 462.  If the record shows that when the trial court
granted the motion to cumulate, it did so by referencing the information of the
earlier sentence necessary to properly identify it, then an appellate court may
reform the order.  Id. at 461
(noting that the trial court indicated the cause number, proper name of the
trial court, date of the sentence, the exact offense, and the term of years of
the sentence, so all necessary information was in the record to reform a
defective cumulation order).








Appellant argues
that the record does not contain the necessary information to reform the
order.  However, the following exchange
occurred when the trial court considered the motion to cumulate:

[Trial Court]: Okay.  In the State of Texas versus James Sanders,
after the jury was excused, the State has made it known to the court that they
had filed a motion to have the sentence that was assessed by this jury run
consecutive to the federal sentence that the defendant has.  And does the State have anything else you
wish to offer concerning that?

 

[State]: Judge, do you want me to
state the cause number into the record or anything?

 

[Trial Court]: Yes.

 

[State]: It is for possession of a
firearm by a felon.  He received 300
months.  The date of judgment was
November 28th of 2000.  In Cause Number -


 

[Trial Court]: 2000?

 

[State]: I=m sorry, 2007.  Cause Number 4:06CR0291-001 in the U.S.
District Court, Eastern District, in Sherman, Texas, the Honorable Michael
Snider presiding.

 








That exchange
reveals the cause number; that the sentence came from the U.S. District Court,
Eastern District of Texas in Sherman, Texas; that the offense was possession of
a firearm by a felon; that the sentence was for a term of three hundred months;
and that Appellant was sentenced on November 28, 2007.  Because the record provides the information
for all five elements of a sufficient cumulation order, we shall modify the
order and affirm it as modified.  See
id. at 462.  The cumulation order is
modified to read: 

The sentence imposed under
F-2007-0057-E (COUNTS I AND II) shall commence when the sentence imposed in
cause number 4:06CR0291-001 out of the U.S. District Court, Eastern District of
Texas in Sherman, Texas on November 28, 2007, for a term of three hundred
months for the offense of possession of a firearm by a felon, ceases to
operate.  The sentences shall run consecutively.

 

VI.  Conclusion

Having overruled
two of Appellant=s issues and having modified the
cumulation order, we affirm as modified. 

PER CURIAM

PANEL: MCCOY, J.;
CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH 

Tex. R. App. P. 47.2(b)

 

DELIVERED: October 2, 2008











[1]See Tex.
R. App. P. 47.4.





[2]Appellant=s federal sentence, which he was
already serving at the time of the aggravated robbery trial, was for the
offense of possession of a firearm by a felon.





[3]Appellant stipulated to the State=s exhibit containing the five
counts of aggravated robbery from 1994. 
He testified that he had two additional convictions for aggravated
robbery in 1994.





[4]When Appellant was unable to remove
A.G.=s pants he continued stabbing her
with the screwdriver.





[5]Appellant gave the following
testimony in response to the State=s question, AAnd I guess you don=t remember . . . all the blood all over you and your car
from what you did to [A.G.]?@  Appellant replied, 

When I was driving, I saw blood on my arm and I saw blood on the shirt
I had on.  And the screwdriver was in the
passenger-side floorboard of the car. 
And when I saw all that, I knew something had happened, but, I don=t know, I couldn=t remember what happened.  And at that time I pretty much went into a
panic, and I drove home.  I went in -- I
wiped the blood off as best I could outside. 
I went in the house.  I changed
clothes.





[6]Pursuant to a warrant, Lewisville
police searched Appellant=s motel room and car.  In the room, they found a black coat with a
hood, a gray Ahoody,@ a piece of white cloth, a Dallas
Cowboys hat, a black curly wig, a black plastic bag, a bank bag containing over
$19,000 in cash, and a Deringer-style pistol. 
In the car, police found three pairs of shoes from Footlocker and a
receipt for  sunglasses from the Sunglass
Hut purchased on the day of a robbery in Dallas, and two jerseys and a Dallas
Cowboys jacket purchased on the dates of two other robberies.  The car also contained lug nuts for the car=s special set of tire rims that
Appellant testified that he purchased for around $1,500 during his crime
spree.  In the glove box, the police
found $495 in cash, an Ace check card with a value of $2,000, and a $250 gift
certificate to the Body Shop.





[7]Appellant admitted to at least
eighteen robberies in Dallas and Denton counties in November 2006.  The cases in Dallas were still pending at the
time of trial. 





[8]Jail staff considered Appellant a
flight risk; he wore maroon pants to identify him as such.





[9]The punishment range before the
jury was fifteen years to life in prison and up to a $10,000 fine.  See Tex. Penal Code Ann. ' 12.32 (Vernon 2007).  The jury imposed a life sentence and a
$10,000 fine. 





[10]The jury heard evidence and
argument of the following extraneous offenses and bad acts during the
punishment phase of trial:  sixteen
additional aggravated robberies, seven aggravated robberies for which Appellant
was convicted in 1994, three escape attempts, unlawful restraint, aggravated
kidnaping, and aggravated sexual assault. 
Appellant admitted to the robberies and escape attempts, and he neither
denied the aggravated kidnaping offense nor attempted to cast doubt on the
victim=s testimony.  He denied that he committed aggravated sexual
assault and unlawful restraint.





[11]However, the lack of a burden of
proof instruction regarding Appellant=s 1994 robberies is not an error because those acts were
already proven beyond a reasonable doubt. 
See Bluit v. State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004)
(stating that no reasonable doubt instruction was required for offenses for
which the defendant had been convicted because the reasonable doubt burden of
proof was already met).





[12]Because no harm exists in omitting
a burden of proof instruction when the evidence is Aclear cut,@ we hold that the error was
harmless with respect to the offenses that Appellant admitted to and with
respect to the overwhelming and uncontested evidence of the aggravated
kidnaping.  See Yates v. State,
917 S.W.2d 915, 923 (Tex. App.CCorpus Christi 1996, pet. ref=d); see also Johnson v. State,
181 S.W.3d 760, 767 (Tex. App.CWaco 2005, pet. ref=d) (finding that no harm exists in omitting a burden of
proof instruction when the evidence is Aclear cut@). 





[13]These counts represent the two
counts of aggravated robbery for which Appellant received this life sentence.