Ervin Lee YATES, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–086–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 29, 1996.

J.C. Carroll, Houston, for appellant.

Robert J. Bell, Edna, Jim Vollers, Austin, for appellee.

Before SEERDEN, C.J., and DORSEY and HINOJOSA, JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found appellant guilty of delivering cocaine and assessed his punishment at ninety-nine years in prison and a fine of $20,000. Appellant complains about several jury arguments, the admission of evidence, the effectiveness of counsel, and the punishment charge. We affirm.

On November 13, 1993, appellant and a group of eight or ten other men were in the parking lot of the BMW Club in Edna. Police officer Craig Repka observed the group and saw Curtis Barnes walk out of the crowd. Repka asked Barnes to talk with him at his patrol car. As the two talked, Repka saw Barnes drop a white rock. Repka retrieved the rock, which he believed to be cocaine, and arrested Barnes. Later, the substance was determined to be cocaine. Appellant was indicted for delivering the cocaine to Barnes.

At appellant's trial, Barnes and two other members of the group that had gathered outside the BMW Club testified for the State. Barnes testified that he tried to buy cocaine from various members of the group and ultimately bought cocaine from appellant for $15 just before he was arrested.

Dorian Miller testified that Barnes approached him and tried to buy cocaine. Miller told Barnes that he did not sell dope. Miller then saw Barnes approach appellant. Although Miller initially heard appellant tell Barnes "to get out of his face," Miller then saw appellant and Barnes step off to the side, away from the group. Miller further testified that appellant then came back, and Barnes got arrested.

The other member of the group to testify was Reginald Callis. His testimony generally mirrors Miller's testimony, except that Callis testified that he saw appellant hand cocaine to Barnes. Callis admitted, however, that he could not tell exactly what was handed and saw no money pass hands.

Appellant testified and denied selling cocaine to Barnes. He testified that Dorian Miller and Reginald Callis were lying. He further testified that he did not separate from the group but that Callis and Barnes did.

In point of error one, appellant contends that the prosecutor engaged in improper jury argument. Appellant contends that the trial court erred by permitting the prosecutor to imply that appellant had to prove his innocence. The prosecutor, in support of his position that appellant was guilty, directed the jury to the testimony of Miller, Callis (appellant's "best buddy"), and Barnes. The prosecutor then stated:

> If [appellant] didn't deliver the cocaine, then who did? Fair question? Now, let me ask you this. Don't you know that with all his buddies out there and in this group, with all of his buddies out there in this group, if there was someone other than Ervin Yates who delivered that cocaine, don't you know one of his buddies would come in here and say it was that guy.

■ Appellant objected that this argument was outside the record and speculative. Appellant's trial objection does not comport with his appellate complaint, and therefore the complaint is not preserved for review. *Cravens v. State,* 687 S.W.2d 748, 752 (Tex. Crim.App.1985). Moreover, the prosecutor repeated the same argument later, and appellant failed to object. By not objecting to the same argument, error, if any, in the first instance was waived. *See DeRusse v. State,* 579 S.W.2d 224, 235 (Tex.Crim.App.1979). Point one is overruled.

In points two and three, appellant also complains about jury arguments. Appellant did not object to any of these arguments at trial, but he asserts that error was not waived because the arguments were so prejudicial. An exception to the waiver rule exists when argument is so egregious that an instruction to disregard could not cure the harm. *Willis v. State,* 785 S.W.2d 378, 385 (Tex.Crim.App.1989); *Landry v. State,* 706 S.W.2d 105, 111 (Tex.Crim.App.1985).

Appellant first contends that the prosecutor improperly stated his personal opinion about the case. "It is well settled that the prosecutor may argue his opinions concerning issues in a case so long as the opinions are based on the evidence in the record." *Barnard v. State,* 730 S.W.2d 703, 718 (Tex.Crim.App.1987); *Contreras v. State,* 838 S.W.2d 594, 606 (Tex.App.—Corpus Christi 1992, pet. ref'd). A prosecutor may not argue that the jury should believe a witness simply because he does. *Vasquez v. State,* 819 S.W.2d 932, 936 (Tex.App.—Corpus Christi 1991, pet. ref'd).

In two instances, the prosecutor told the jury that it should take them longer to elect a foreperson than to find appellant guilty. We do not find this argument, if improper, so egregious that an instruction to disregard could not have cured the harm. The prosecutor employed a rhetorical device to argue that the evidence of appellant's guilt was overwhelming. In another instance, the prosecutor implored the jury to look at the evidence, referred to some testimony which the court reporter had transcribed, and rhetorically asked, "And am I telling the truth, or is somebody else?" The import of the prosecutor's statement was to refer the jury to the testimony. Any error in the prosecutor's method could have been cured by objection and instruction. Finally, appellant complains that the prosecutor mentioned that outside the courtroom someone would not have a reasonable doubt when presented with certain facts but when "they" come into court, "we want to play like, 'well, there is a doubt.'" This argument pointed out to the jury the importance of using common sense in reaching its verdict. The argument does not inject the prosecutor's personal opinion.

Overall, the prosecutor's statements do not indicate that his arguments are based on anything other than the evidence admitted at trial. The arguments do not insert any new fact into the case or ask the jury to rely upon the expertise of the prosecutor in assessing the evidence. The arguments, even if improper, were not so egregious that an instruction to disregard would not have cured the error.

Finally, appellant contends that the trial court erred by permitting the prosecutor to vouch for the credibility of the State's witnesses. Appellant complains of the following arguments:

1) "About the only thing I haven't brought you, and I am not being rhetorical or silly about this, is a video of the crime."

2) "Now, what in the world do you expect as a jury for me to bring you to prove that Ervin Yates transferred it?"

3) "If there was a transfer made, which there was, how can I prove it? ... I can prove it from this person who made the transfer. Let me say this ... Curtis Brown has nothing to gain by lying."

4) "Each one of these people told you what happened out there. They told who delivered the cocaine. And Mr. Walker makes a great deal about the fact that the police report doesn't say who delivered the cocaine."

5) "I don't know what other evidence we could bring you short of a video out there."

Even if we assume that the prosecutor improperly vouched for the credibility of his witnesses or evidence in these arguments, none of these comments are so egregious that an instruction to disregard would not have cured the error. Points two and three are overruled.

By point four, appellant complains that the trial court erred by admitting a prior conviction for impeachment without stating the reason for its admissibility. As noted above, appellant testified in his own defense. On cross-examination, the State, in a single compound question, asked appellant if he had been indicted for felony theft, convicted of misdemeanor theft, and placed on probation.

Appellant objected to the relevancy of such evidence and then complained that the prejudicial effect outweighed its probative value.

The trial court stated:

Well, counsel, I feel that the matter is relevant in light of the fact that there is a direct conflict of the testimony of the defendant and several of the other witnesses that have testified in the trial. And I have taken into consideration the fact that this, while it has probative value, it also has some prejudicial effect and the fact that it is proof of a commission of some other crime that's not related to the present crime. However, I feel that the prejudicial effect is outweighed by the probative value and that this is an appropriate piece of evidence that should come before the jury. I will note your objection, however, and I will overrule it.

Appellant cites *United States v. Acosta*, 763 F.2d 671 (5th Cir.1985), *cert. denied*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985), for the proposition that a trial court must make findings of fact and conclusions of law when admitting prior convictions for impeachment. In *Theus v. State*, 845 S.W.2d 874 (Tex.Crim.App.1992), the Court held that Texas trial courts are not required to make specific findings of fact and conclusions of law when admitting a prior offense for impeachment under Tex.R.Crim. Evid. 609.[1] While noting that federal trial courts are required to make such findings, and while suggesting that Texas courts "enunciate on the record" whether the probative value of a conviction outweighs its prejudicial effect and the rationale behind such a determination, the Court refused to require Texas trial courts to make specific findings. *Theus*, 845 S.W.2d at 880 n. 6.

In the present case, the trial court performed its duty to weigh the probative value and prejudicial effect of admitting the evidence. Appellant did not object at trial that the trial court's enunciation was less than required and, thus, did not preserve this

complaint for review. Tex.R.App.P. 52(a). Even if error had been preserved, the court's ruling complies with *Theus*. The trial court did not err. Point four is overruled.

By points five and ten, appellant claims that he was denied effective assistance of counsel at the guilt phase of trial. To establish ineffective assistance of counsel, the defendant must show that 1) counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment and 2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Jackson v. State*, 877 S.W.2d 768, 770–71 (Tex.Crim.App.1994). To show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Appellant contends that counsel was deficient because he failed to object to evidence that appellant, previously convicted of misdemeanor theft, had been indicted for felony theft. Evidence should not be admitted to show that a defendant was indicted for a crime greater than the conviction. *See Davis v. State*, 642 S.W.2d 510, 513 (Tex. Crim.App.1982); *Damian v. State*, 881 S.W.2d 102, 113 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Counsel erred by failing to object. We find, however, that appellant has failed to show a reasonable probability that the result of the proceedings would have been different without this error. When evidence of the prior theft conviction was entered, the State did not dwell on the fact that the prosecution had been initiated by a felony indictment. The prosecutor, in a single compound question, merely asked appellant if he had been indicted for felony theft and convicted of misdemeanor theft.

1. Tex.R.Crim.Evid. 609(a) provides, "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party."

When appellant testified that he had been, no further questions were asked.

During argument, the prosecutor did not contend that appellant's credibility was somehow less because he had been indicted for a felony rather than a misdemeanor. Given the evidence which incriminated appellant, the prosecutor's lack of emphasis concerning the felony indictment, and the fact that evidence of the conviction was not erroneously admitted, we cannot find that counsel's failure to object to the indictment reference was so egregious that the error created a reasonable probability that the result of the proceeding would have been different.

■ Appellant further contends that counsel was ineffective because he did not object to the jury arguments discussed above in points two and three. We disagree. None of the arguments misstated the law, implored the jury to act improperly, or injected any new facts to the extent that counsel's failure to object created a reasonable probability that the result of the proceeding would have been different. Points five and ten are overruled.

■ By various additional points, appellant complains that counsel failed to provide effective assistance during the punishment phase of trial. The standard by which we evaluate a claim of ineffectiveness at the punishment phase is whether counsel was reasonably likely to render and rendered effective assistance. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987); *see Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim.App.1992).

In applying this standard, this Court judges the full scope of assistance—representation, performance, delivery—for effectiveness rather than adequacy of ability or capacity to advise. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991). The standard mandates that we examine counsel's competence and assistance. *Id.*[2] In doing so, we examine counsel's entire representation of appellant. *See Ex parte Walker*, 777 S.W.2d 427, 431 (Tex.Crim.App.1989). With

this standard in mind, we now turn to appellant's specific complaints.

■ Appellant argues in points six and seven that counsel was ineffective because he did not object to the admission of the details of a prior offense and of a completed deferred adjudication. Appellant relies on case law[3] predating the current version of TEX. CODE CRIM.PROC.ANN. art. 37.07(3)(a) (Vernon Supp.1996). The current version provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and not withstanding Rules 404 and 405, Texas Rules of Criminal Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act....* (emphasis ours).

While unadjudicated extraneous offenses were once generally inadmissible at the punishment phase of trial, *see Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992), the legislature amended the Code of Criminal Procedure, effective September 1, 1993, to allow the admission of such evidence. *See* ch. 900, § 5.05, 1993 Tex.Gen.Laws 3586, 3759. Appellant's offense and trial occurred after the effective date of this amendment. Thus, by statute, the complained-of evidence was not objectionable. Points six and seven are overruled.

Appellant contends in points eight and nine that the punishment charge should have included a reasonable doubt instruction regarding extraneous offenses and that counsel

---

**2.** The Court questioned but did not deviate from this standard. *Felton*, 815 S.W.2d at 737.

**3.** *Johnson v. State*, 650 S.W.2d 784 (Tex.Crim. App.1983); *Walker v. State*, 610 S.W.2d 481 (Tex. Crim.App.1980).

was ineffective for not objecting to the lack of such instruction. Numerous witnesses testified at the punishment phase regarding extraneous crimes and bad acts committed by appellant, but counsel did not request a jury instruction regarding the State's burden of proof to establish that appellant committed these extraneous crimes and bad acts, and the charge included no such instruction.

■ The law is settled that at the guilt-innocence phase, the trial court must instruct the jury not to consider extraneous offense evidence unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense. *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App.1994). The Court of Criminal Appeals has not yet decided whether the jury must be so charged at the punishment phase. Three courts of appeals, however, have considered the question and have reached differing conclusions. *See Escovedo v. State*, 902 S.W.2d 109, 113–14 (Tex.App.—Houston [1st Dist.] 1995, no pet.) (instruction required); *Smith v. State*, 899 S.W.2d 31, 35 (Tex.App.—Austin 1995, pet. ref'd) (not giving instruction, if required, not egregious error); *Mitchell v. State*, 892 S.W.2d 213, 215 (Tex.App.—Texarkana 1995, pet. granted) (instruction not required).

In the present case, for purposes of appellant's complaint, we presume that the charge contained error and that a "reasonable doubt" instruction should have been given, i.e., the jurors should have been instructed to consider the extraneous offenses and acts against appellant only if the jurors found beyond a reasonable doubt that appellant committed these acts and offenses.

■ When the punishment charge contains error but no proper objection was lodged, a defendant must show actual egregious harm to gain a reversal of his conviction. *Kucha v. State*, 686 S.W.2d 154, 155–56 (Tex.Crim.App.1985); *see Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). To determine whether appellant has met this tough standard, we review the entire punishment charge, evidence, and any other matter relevant to harm. *Kucha*, 686 S.W.2d at 155–56.

■ The State offered extensive evidence of appellant's prior crimes and bad acts. Some of these crimes and acts resulted in conviction, while most did not. We briefly summarize the evidence admitted.

A Victoria police officer testified that in December 1990, he witnessed appellant shoot a rifle four times at a fleeing vehicle after it had scraped his car. Appellant was indicted for aggravated assault, convicted of assault, and placed on deferred adjudication for the above incident. A Victoria County probation officer testified that although appellant had some problems while on probation, he eventually completed all of his community service and paid his fees. Appellant was then released from probation.

A Jackson County probation officer testified that he supervised appellant on a misdemeanor theft conviction from Travis County beginning in October 1993. He saw appellant three times and had no problems.

James Roberts testified that in January 1992 appellant confronted him in the BMW Club and said he was going "to kick my ass." Roberts left the club with his wife. Later appellant tried to run over Roberts and his wife with a Cadillac.

In April 1992, appellant chased, beat, and kicked Roberts at the Handy Quick store. During this incident, appellant threatened to kill Roberts. Gilbert Martinez, a clerk at the Handy Quick, tried to intervene, but appellant, according to Martinez, threatened to "kick my mescan ass." Martinez further testified that appellant did not cause him any physical injury.

El Campo police officer Stacy Mueller testified that he stopped appellant in July 1992 for a traffic violation. Appellant's passenger was arrested for carrying a weapon. A search of appellant's car revealed a pistol that was stolen in Austin. Mueller arrested appellant for unlawfully carrying a weapon, but the charges were later dismissed.

Michael Viella testified that in November 1992 appellant and a group of people came to Viella's house and fought with him and his brother. Appellant hit Viella in the head with a golf club, causing serious injury, and then threatened to burn down the house.

Ambrose Viella testified that he witnessed the incident between appellant and Michael and testified about it before the grand jury. After he testified, appellant came up to him on the street and hit him. Appellant threw him on the ground and said he was going to shoot him.

Bay City police officer Chris Crummett testified that in January 1993 he stopped appellant for a traffic violation. Crummett saw three rocks of cocaine in the car. Appellant was arrested.

Jackson County Sheriff's Deputy Curt Gabrysch testified that in April 1993 he arrested appellant on a Travis County theft warrant. While searching appellant, Gabrysch found a small bag of marihuana. Gabrysch further testified that in December 1993 he attempted to arrest appellant. Appellant took off running. Gabrysch slipped and hurt his knee. Appellant got away. Later that day, when Officer Fielder tried to arrest appellant, appellant pushed open a door, hurting the officer's thumb, elbow, and shoulder. Appellant ran away.

Derrick Boston and Elvin Dilworth testified that in July 1993 they were walking down the road when appellant got out of a car and fired a rifle or shotgun at them two or three times. Dilworth and Boston returned fire and then ran. Appellant chased them and fired his gun into a crowd of people.

James King testified that appellant tried to run over him.

Gilbert Manzanalez testified that, after a traffic incident, appellant threatened to kill him.

A number of officers testified that appellant has a bad reputation.

During the punishment phase, appellant called his father who testified favorably about the incident involving Derrick Boston and Elvin Dilworth. Appellant's second witness, who witnessed portions of the same incident, contradicted appellant's father's testimony in material respects. The second witness, who had a series of felony convictions, testified that appellant's reputation was good.

During argument, the parties did not mention the burden of proof. Appellant's counsel mentioned a number of these extraneous offenses and, rather than denying their existence, argued that appellant served his probationary periods and "did what was required." Counsel mentioned the unadjudicated offenses and pointed out that the State had not pursued these matters when they occurred and should not pursue them now. Counsel's argument is summarized in his plea, "What we ask you to do is let each of those stand on its own merits in a court and decide whether those allegations, those thoughts, those charges can stand up under the full scrutiny of a jury trial of a charge." In response, the prosecutor summarized the testimony presented, asked the jury to consider it all, and argued that appellant should be accountable.

The *Almanza* analysis also requires us to consider any other error in the charge and any other relevant factor. The punishment charge did not contain any other error, and we find nothing else in the charge or argument that is relevant to determining the harm from a lack of reasonable doubt instruction.

Applying the *Almanza* analysis, we do not find egregious harm. The State's evidence concerning these extraneous crimes and acts was substantially uncontroverted, except for the shooting incident involving Boston and Dilworth. Nothing in the record suggests that the jury would have discounted the extraneous crimes and acts if a "reasonable doubt" charge had been included. The State's evidence showed that appellant was frequently engaged in criminal acts and that many of these acts were violent and drug related. The State's strategy was to depict appellant as a criminal who continued to commit offenses even when on probation. The absence of a reasonable doubt instruction may have eased the State's burden, but it ultimately had little effect because of the uncontroverted nature of the evidence. In addition, appellant's strategy was to show, despite the extraneous offenses, that appellant had not been convicted of a felony and had not had any probation revoked. The absence of a reasonable doubt instruction did

**924**

not hurt appellant in this regard. Moreover, appellant's counsel did not argue that most of these extraneous acts had not occurred. Only the Boston–Dilworth incident was disputed, but this incident, even if improperly considered by the jury, is insufficient to demonstrate egregious harm in light of the overwhelming number of other extraneous offenses and acts. Accordingly, we find no reversible error.

■ We also find that counsel's failure to request a charge on extraneous-offense burden of proof did not amount to ineffective assistance of counsel. Appellant was tried in January 1994, before any court of appeals held that a "reasonable doubt" charge is proper. Even today, the courts of appeals are split regarding the necessity of such a charge. Assuming, however, that reasonably effective counsel would have requested a charge based on the language of the statute itself, we find that counsel's overall representation of appellant was adequate. We have examined the entire record to judge counsel's effectiveness. Counsel properly and thoroughly examined witnesses, raised various objections, objected successfully to the admission of evidence, and argued on appellant's behalf. Counsel cannot be faulted for the strength of the State's case or the lack of defensive evidence. While counsel could have objected to some of the prosecutor's jury argument and should have requested a charge on reasonable doubt, these acts of omission do not rise to the level of ineffective assistance. Appellant's ninth and tenth points of error are overruled.

In point eleven, appellant contends that the cumulative effect of counsel's errors deprived him of a fair trial. We disagree. We have previously determined that appellant was not deprived of the effective assistance of counsel during the guilt or the punishment phases of trial. Thus, appellant was not deprived of a fair trial because of counsel's errors. Point eleven is overruled.

The judgment of the trial court is affirmed.