

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-058-CR

JAMES SANDERS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

### FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In three points, Appellant James Sanders appeals his life sentence for two counts of aggravated robbery that will run consecutively with a three-hundred-month federal sentence.[2]  We modify the judgment and affirm as modified.

---

[1]*See* Tex. R. App. P. 47.4.

[2]Appellant's federal sentence, which he was already serving at the time of the aggravated robbery trial, was for the offense of possession of a firearm by a felon.

## II. Factual and Procedural History

### A. The Convictions for Aggravated Robbery

On November 12, 2006, Appellant robbed two employees at a Domino's Pizza in Lewisville, Texas. Brian Kennedy, the assistant manager on duty that night, saw Appellant, wearing a "hoody" and some sort of mask covering his lower face, push Scott Latham—an employee who was leaving the building—back through the door as he entered the building. Appellant pointed a pistol at another employee and demanded money. When the employee informed Appellant that there was no cash register at her counter, he walked around the counter to verify, then demanded money from Kennedy. Kennedy surrendered a bank bag and all of the money in the safe. Appellant left with approximately $1,600 in cash and checks. Appellant was indicted for two counts of aggravated robbery. The jury found Appellant guilty of both counts following his guilty plea.

### B. Evidence of Other Crimes and Bad Acts

During the punishment phase, the jury heard testimony from the State's witnesses and Appellant about the two aggravated robberies at Domino's and about Appellant's other crimes and bad acts. Appellant admitted that he was convicted of several counts of aggravated robbery with a firearm in 1994,

2

resulting in his incarceration until 2002.[3] He admitted that he served the full prison sentence because of his poor conduct while in prison.

With regard to an aggravated sexual assault charge pending in Dallas County at the time of Appellant's punishment trial, which, according to Appellant, led to his subsequent crime spree, Appellant testified that on December 28, 2005, he had consensual sex with a woman in an apartment complex laundry room. He testified that another woman walked in, saw them, and left, and then he immediately left because the complainant told him to. The police arrested Appellant at his apartment several hours later. Detective Johnson of the Irving Police Department testified about his investigation of this incident, but neither the complainant nor the witness testified during Appellant's punishment trial. Appellant denied committing any offense.

After Appellant was released on bond for the aggravated sexual assault charge, police arrested him for unlawful restraint, an offense he also denied committing. Appellant's bond insurer revoked his bond, and Appellant spent approximately six and one-half months in jail. When he was again released on bond, Appellant testified that he was forced to sell his car to retain an attorney.

---

[3]Appellant stipulated to the State's exhibit containing the five counts of aggravated robbery from 1994. He testified that he had two additional convictions for aggravated robbery in 1994.

Appellant further testified that stress and the need for money to support his family and to pay his attorney caused him to commit a series of crimes—including the eighteen robberies to which he admitted—in November 2006.

During the punishment phase, the jury also heard testimony regarding another attack, which Appellant did not deny committing. A.G. testified that, on November 8, she was walking home from a store when Appellant grabbed her and pushed her into a blue car. A.G. struggled to get out of the car while Appellant repeatedly stabbed her with a screwdriver. Appellant parked the car in a secluded area and told A.G. in Spanish that he wanted to rape her. A.G. testified that she feared for her life as Appellant stabbed her in her head, chest, ribs, and throat.[4] A.G. lost consciousness and woke up in a closed garbage dumpster. Appellant claimed he could not recall the incident, but he never denied it or attempted to cast doubt on A.G.'s testimony. He also claimed that he "snapped" and "had some type of nervous breakdown" from the stress of the aggravated sexual assault allegation and that this attack was the result.[5]

---

[4]When Appellant was unable to remove A.G.'s pants he continued stabbing her with the screwdriver.

[5]Appellant gave the following testimony in response to the State's question, "And I guess you don't remember . . . all the blood all over you and your car from what you did to [A.G.]?" Appellant replied,

4

The jury heard testimony that on November 12—the same day that Appellant robbed the Domino's Pizza employees—Appellant robbed the receptionist at the Denton Quality Inn by pointing a gun at her and demanding money. On November 14, Appellant robbed Allison Scott at gunpoint in front of North Texas Vision in Lewisville. Appellant, wearing a mask and a hood, grabbed Scott's purse as she was about to enter the store and ordered her to give him the purse. Scott initially refused, but she complied when Appellant pointed a gun at her head.

On November 15, Appellant robbed an employee at the Lewisville Easy Loan. An employee saw Appellant walking towards the building in a black "hoody" with a white rag covering his lower face; believing Appellant was a robber, the employee pressed the panic button before Appellant even entered the building. At gunpoint, Appellant took all the money from the cash registers and the safe and then left. Appellant admitted to committing this robbery.

On November 16, Appellant, wearing a "black squiggly wig," robbed

When I was driving, I saw blood on my arm and I saw blood on the shirt I had on. And the screwdriver was in the passenger-side floorboard of the car. And when I saw all that, I knew something had happened, but, I don't know, I couldn't remember what happened. And at that time I pretty much went into a panic, and I drove home. I went in -- I wiped the blood off as best I could outside. I went in the house. I changed clothes.

three employees at the Lewisville Security Finance Loan office. At gunpoint, Appellant demanded money from the three employees; he left with $883 in a black plastic bag. Appellant also admitted to committing this robbery.

Lewisville Police Officer Jay Alexander was on patrol the night of November 17 and early morning of November 18 when he saw a blue car in a motel parking lot that matched the description of a car wanted by the Carrollton Police Department. Officer Alexander reported the car's vehicle identification number and learned that it was the car that Carrollton police wanted, that it was Appellant's car, and that a warrant had been issued for his arrest. Other Lewisville officers arrived and arrested Appellant in his motel room on the warrant.[6]

At trial, Dallas Detective Brent Maudlin testified that on November 20, 2006, he questioned Appellant at the Lewisville Police Department

---

[6]Pursuant to a warrant, Lewisville police searched Appellant's motel room and car. In the room, they found a black coat with a hood, a gray "hoody," a piece of white cloth, a Dallas Cowboys hat, a black curly wig, a black plastic bag, a bank bag containing over $19,000 in cash, and a Deringer-style pistol. In the car, police found three pairs of shoes from Footlocker and a receipt for sunglasses from the Sunglass Hut purchased on the day of a robbery in Dallas, and two jerseys and a Dallas Cowboys jacket purchased on the dates of two other robberies. The car also contained lug nuts for the car's special set of tire rims that Appellant testified that he purchased for around $1,500 during his crime spree. In the glove box, the police found $495 in cash, an Ace check card with a value of $2,000, and a $250 gift certificate to the Body Shop.

Headquarters about a series of robberies that occurred in Dallas over the previous two weeks. Appellant admitted to committing twelve robberies in Dallas.[7] During the interview, Appellant ran out of the room and attempted to escape. Appellant admitted that this was his first of three escape attempts following his November 2006 arrest. His second attempt occurred in March 2007, when he attempted to run away after exiting a transport van in leg shackles. He quickly fell to the ground, and officers secured him. Appellant's third escape attempt occurred in June 2007 at the Denton County Jail when he threw cleaning fluid into a police officer's eyes and ran out of his cell and down the hallway.[8] The officer chased Appellant and tackled him three times, but each time Appellant broke free. Appellant was finally subdued with the help of three other officers.

By the end of the punishment phase of this trial, Appellant admitted to at least eighteen aggravated robberies — including the incidents described above — a 1994 conviction for seven counts of aggravated robbery with a firearm, a federal conviction for possession of a firearm by a felon for which he was

---

[7]Appellant admitted to at least eighteen robberies in Dallas and Denton counties in November 2006. The cases in Dallas were still pending at the time of trial.

[8]Jail staff considered Appellant a flight risk; he wore maroon pants to identify him as such.

7

already serving a twenty-five-year sentence, and three escape attempts. Further, he did not deny the aggravated kidnaping and screwdriver attack on A.G. and did not attempt to discredit her testimony. Appellant did, however, deny the aggravated sexual assault and unlawful restraint allegations.

Before the trial, the State filed a motion to cumulate sentences but did not identify the sentence to be cumulated with the sentence to be imposed for the two counts of aggravated robbery. After the jury assessed life imprisonment but before the trial court sentenced Appellant,[9] the State verbally requested that the life sentence be stacked on top of the federal sentence that Appellant was serving at the time of trial. The trial court granted the State's motion and included the stacking order in the judgment. This appeal followed.

### III. Motion for Mistrial

In his first point, Appellant argues that the trial court abused its discretion by not granting his motion for mistrial after the trial court sustained his objection to an improper argument by the State during closing arguments and instructed the jury to disregard that argument.

### A. Standard of Review

---

[9]The punishment range before the jury was fifteen years to life in prison and up to a $10,000 fine. *See* Tex. Penal Code Ann. § 12.32 (Vernon 2007). The jury imposed a life sentence and a $10,000 fine.

To be proper, a jury argument must fall within one of the following four general areas: (1) summation of evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied,* 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

When the trial court sustains an objection and instructs the jury to disregard an improper argument but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.*; *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004). In determining whether the trial court abused its discretion by denying the mistrial, we balance three factors: (1) the severity of the misconduct; (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct. *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

When evaluating the severity of the misconduct, an appellate court will not reverse the trial court except for extreme cases in which the argument is manifestly improper, harmful, and prejudicial; a mandatory provision of a statute is violated; or the improper argument injects new and harmful facts into the case. *Hawkins*, 135 S.W.3d at 81. The error is more severe, and hence more likely to lead to a reversal, if the error is repeated and not isolated. *Id.* at 83, 85. When analyzing the second prong—curative measures—appellate courts may consider the exact objection and instruction to determine how effective the instruction was in explaining what exactly the jury should do, any self-correcting measures the State took, and the jury charge. *Id.* at 84. In most cases, the instruction from the trial court will cure any harm. *Id.* In evaluating the final factor—certainty of punishment—appellate courts determine whether the same punishment would be assessed without the improper argument. *Id.* at 77.

**B. Analysis**

Appellant complains of the following argument made by the State during its closing argument in the punishment phase of the trial:

> [State]: Everything this man has done, 18 robberies, an unlawful restraint, aggravated sexual assault, aggravated kidnaping, that is a life sentence on the installment plan.

> [Defense]: Your Honor, I'm going to object to the argument of the

aggravated sexual assault.  That's still a pending case and he's denied it.

[Trial Court]: Sustained.

[Defense]: I'd ask the jury be instructed to disregard.

[Trial Court]: That portion of the argument I'll instruct the jury to disregard and not consider for any purpose.

[Defense]: And move for a mistrial.

[Trial Court]: Denied.

[State]: Everything he has pled to, that aggravated kidnaping, that's a life sentence on the installment plan.  It's one thing right after the other.  He needs to be put in check, and the only way you can stop him is with a life sentence.

Appellant contends that the instruction to disregard was insufficient to cure the harm.  However, despite Appellant's argument that the State's inclusion of the aggravated sexual assault under the umbrella of "everything this man has done" was manifestly improper, we disagree.  Although improper, the comment did not violate a mandatory statutory provision or inject new and harmful facts into the case.  The jury had already heard testimony from the investigating detective, Appellant, and Appellant's attorney regarding the allegation.  Moreover, our review of the record shows that the State's misconduct was an isolated event and that it did not happen again.  Thus, the severity of the improper comment is lessened and does not amount to being

11

"manifestly improper" as Appellant contends. *See Hawkins*, 135 S.W.3d at 83.

In analyzing the curative measures taken, the record reflects that defense counsel's objection alerted the jury that Appellant was specifically objecting to the State's inclusion of the aggravated sexual assault as part of "[e]verything [Appellant] has done." The trial court granted Appellant's requested instruction, and in doing so, clearly and promptly identified the offending phrase and what action the jury should take. Therefore, the trial court's curative measure was effective to cure any harm resulting from the State's improper argument. *See id.* at 84 (noting that when trial counsel asks for a certain instruction and the trial court gives that instruction to the jury, that instruction is considered effective to cure any harm in most cases, and noting that curative measures are more likely to cure harm when they clearly identify the error).

Moreover, any harm resulting from the improper comment was further cured when the State corrected itself by saying "everything he pled to" immediately after the trial court instructed the jury to disregard the State's initial comment. *Id.* (noting that a prosecutor's self-corrective action "is a relevant consideration in determining harm and can, in the appropriate circumstances, render an improper comment harmless"). Thus, the jury knew that the State was asking them to consider the extraneous offenses that Appellant pleaded to—rather than everything Appellant "has done"—and

12

therefore, we hold that the curative measures were effective to minimize any harm resulting from the improper comment.

Furthermore, after conducting a review of the entire record, we determine that Appellant's punishment was certain, even absent the State's improper comment. First, the jury could have considered numerous other violent acts that Appellant committed and admitted to that overshadowed the aggravated sexual assault allegation. *See id.* at 85 (noting that the number and nature of other crimes is a relevant factor in whether or not the same punishment would have been assessed without the improper argument). Second, the jury heard testimony from the investigating detective, Appellant's own testimony regarding the alleged aggravated sexual assault, Appellant's attorney's argument referring to the incident, and the State's reference to the allegation later in its closing argument. Therefore, even if the State had not made the improper reference, the jury would still have been influenced by the other references to the aggravated sexual assault allegation that were not objected to or found to be improper by the trial court. Finally, in its closing argument, the State told the jury that Appellant was eligible for a life sentence for each aggravated robbery and for the aggravated kidnaping, and Appellant did not object to or rebut this argument. Thus, even if the jury totally disregarded the aggravated sexual assault allegation, it would have assessed the same

13

punishment.

In balancing the severity of the misconduct, the curative measures, and the certainty of the punishment assessed absent the misconduct, we hold that the trial court did not abuse its discretion by denying the motion for mistrial. The argument, although improper, was an isolated incident. The objection and trial court's instruction to disregard were prompt and clear, and the State quickly corrected itself. Also, the number and nature of the crimes that Appellant committed were a more likely reason for the punishment than the improper argument, and any influence that the aggravated sexual assault allegation may have had over the jury could just as easily have come from the other references made by Appellant and his counsel rather than from the State's improper argument. *See id.* at 81–85. Therefore, we overrule Appellant's first point.

## IV. Jury Charge Error

In his second point, Appellant argues that the trial court erred when it failed to charge the jury with respect to the State's burden of proof regarding unadjudicated extraneous offenses and bad acts.

## A. Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether

sufficient harm resulted from the error to require reversal. *Id.* at 731–32. If there is error in the court's charge but the appellant did not object to it at trial, we must decide whether the error was so egregious and created such harm that appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon Supp. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Hutch*, 922 S.W.2d at 171.

When examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Stuhler*, 218 S.W.3d at 719; *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); *Almanza*, 686 S.W.2d at 171. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.

15

*Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171; *Schiffert v. State,* 257 S.W.3d 6, 11 (Tex. App.—Fort Worth 2008, pet. dism'd). Errors resulting in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Hutch*, 922 S.W.2d at 171.

## B. Presence of Error

The jury charge failed to include an instruction that the jury must find beyond a reasonable doubt that Appellant committed the extraneous offenses before considering those offenses in determining Appellant's punishment.[10] Failure to sua sponte give a reasonable doubt instruction at punishment regarding extraneous offense evidence is error subject to the *Almanza* harm analysis.[11] *See Huizar v. State*, 12 S.W.3d 479, 484–85 (Tex. Crim. App.

---

[10]The jury heard evidence and argument of the following extraneous offenses and bad acts during the punishment phase of trial: sixteen additional aggravated robberies, seven aggravated robberies for which Appellant was convicted in 1994, three escape attempts, unlawful restraint, aggravated kidnaping, and aggravated sexual assault. Appellant admitted to the robberies and escape attempts, and he neither denied the aggravated kidnaping offense nor attempted to cast doubt on the victim's testimony. He denied that he committed aggravated sexual assault and unlawful restraint.

[11]However, the lack of a burden of proof instruction regarding Appellant's 1994 robberies is not an error because those acts were already proven beyond a reasonable doubt. *See Bluit v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) (stating that no reasonable doubt instruction was required for offenses for which the defendant had been convicted because the reasonable doubt burden of proof was already met).

16

2000) (op. on reh'g); *Almanza*, 686 S.W.2d at 171.


**C. Egregious Harm**

Appellant failed to object to the trial court's failure to include the reasonable doubt instruction; therefore, we must decide whether the error was so egregious and created such harm that Appellant did not have a fair and impartial trial—in short, whether "egregious harm" occurred. *See* Tex. Code Crim. Proc. Ann. art 36.19; *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171. In his appeal, Appellant argues that he suffered harm from the erroneous jury charge only with regard to the aggravated sexual assault offense.[12] Accordingly, we limit our review to this specific issue.

**1. Jury Charge**

In reviewing a case for egregious harm, we first look at the jury instructions as a whole. *Hutch*, 922 S.W.2d at 171. In certain instances, harm resulting from the absence of a burden of proof instruction for a particular issue

---

[12]Because no harm exists in omitting a burden of proof instruction when the evidence is "clear cut," we hold that the error was harmless with respect to the offenses that Appellant admitted to and with respect to the overwhelming and uncontested evidence of the aggravated kidnaping. *See Yates v. State*, 917 S.W.2d 915, 923 (Tex. App.—Corpus Christi 1996, pet. ref'd); *see also Johnson v. State*, 181 S.W.3d 760, 767 (Tex. App.—Waco 2005, pet. ref'd) (finding that no harm exists in omitting a burden of proof instruction when the evidence is "clear cut").

17

may be avoided where the general jury instructions regarding the burden of proof were sufficient to alert the jury as to the requisite burden of proof. *See Olivas v. State*, 202 S.W.3d 137, 146–47 (Tex. Crim. App. 2006).

In this case, the charging document did not instruct the jury that it must determine that Appellant committed the extraneous offenses beyond a reasonable doubt before considering those offenses in assessing punishment. In looking at the jury instructions as a whole, the jury charge on punishment tells the jury to find as true the allegation of Appellant's prior conviction for aggravated robbery, lists the range of punishment, explains the duty to assess punishment, and advises the jury to consider "all of the facts shown by the evidence admitted . . . in the full trial of this case and the law submitted . . . in this charge."

Because the charging document failed to instruct the jury regarding the burden of proof on the extraneous offenses, and because the jury was instructed to consider "all facts shown by the evidence admitted"—which necessarily included Detective Johnson's testimony regarding his investigation of the aggravated sexual assault—the jury may have considered the aggravated sexual assault offense in its assessment of punishment without knowing that it had to first find that Appellant committed that offense beyond a reasonable doubt. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (noting that a

18

presumption exists that a jury follows the jury instructions). As a result, it is possible that some jurors may have considered the offense improperly because of the charging document. Therefore, we cannot say that any harm from the omission of the instruction is removed or lessened by the jury charge as a whole. *See Olivas*, 202 S.W.3d at 146–47.

### 2. State of the Evidence

Under the second factor of the *Almanza* egregious harm test, we consider the weight of the probative evidence and the contested issues. *See Almanza*, 686 S.W.2d at 171. Egregious harm does not result from omitting a burden of proof instruction in the jury charge when the evidence presented to the jury would support a finding in accordance with the appropriate burden of proof. *See Olivas*, 202 S.W.3d at 147. For example, there is no egregious harm if the issue is uncontested or if the State presented sufficient evidence to support a jury finding beyond a reasonable doubt. *See id.*

Here, the evidence presented at trial could not support a jury finding that Appellant committed aggravated sexual assault beyond a reasonable doubt because the only evidence of the crime was Appellant's testimony that he and the complainant had consensual sex. *See Johnson*, 181 S.W.3d at 767. The bulk of the evidence that the State presented at the punishment trial did not concern the alleged aggravated sexual assault; rather, it concerned the two

19

counts of aggravated robbery upon which this appeal is based, the other aggravated robberies Appellant committed in November 2006, the aggravated kidnaping and screwdriver attack, and Appellant's three escape attempts. Although an Irving detective briefly testified for the State regarding his investigation of the alleged aggravated sexual assault, he did not testify about the facts of the incident itself, and the trial court sustained defense counsel's objections whenever the detective's testimony went beyond the steps he took in his investigation. Further, the complainant did not testify nor did any other witness to the incident except for Appellant.

Nor was the aggravated sexual assault issue uncontested. Appellant denied committing the offense. Therefore, based on the evidence presented, we cannot say that the error in omitting the burden of proof instruction was harmless because the aggravated sexual assault was not uncontested and the State did not present sufficient evidence to support a jury finding beyond a reasonable doubt. *See Olivas*, 202 S.W.3d at 148; *Yates*, 917 S.W.2d at 923.

### 3. Arguments of Counsel

The next factor in our analysis is the jury argument. If either attorney properly instructed the jury about the appropriate burden of proof in his or her argument, then there is no egregious harm from the jury charge error. *See Olivas*, 202 S.W.3d at 148 (finding that any harm caused by a jury charge that

lacks a burden of proof instruction is lessened when the defense counsel correctly instructed the jury on the burden of proof issue). Although neither side in this case discussed the burden of proof regarding extraneous offenses, the State argued that it could impose a life sentence for each of the aggravated robberies. Because the State informed the jury that it had the power to impose a life sentence without even considering the aggravated sexual assault allegation, it is unlikely that the charge error changed the outcome and deprived Appellant of a valuable right. *See Hutch*, 922 S.W.2d at 171.

### 4. Other Relevant Information

Jury charge error is not egregious when the issue involved in the erroneous jury charge is not a central issue in the case. *Id.* at 166. Although both sides addressed the aggravated sexual assault allegation in their arguments and cases-in-chief, neither side heavily focused on whether or not Appellant committed the aggravated sexual assault. Instead, the parties focused on Appellant's admissions with regard to his other offenses. Therefore, we cannot say that it was a crucial issue in the case. *Id.*

Furthermore, we also may consider the severity of the punishment assessed, which may indicate egregious harm in some situations. *See Bolden v. State*, 73 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). In this case, Appellant received a life sentence, the maximum allowed,

21

However, a maximum punishment alone does not indicate egregious harm. *See Huizar*, 29 S.W.3d at 251. One important consideration is whether the jury would have imposed the same punishment even if it had been properly instructed. *Allen*, 253 S.W.3d at 267–68. In other words, there is no egregious harm if the jury would still have assessed a life sentence even if properly instructed to consider only extraneous offenses if they first found that he committed those offenses beyond a reasonable doubt. *See id.*

The record shows that Appellant admitted to eighteen aggravated robberies during which he threatened people with a firearm, sometimes by pointing it at the victim's head. He was previously convicted of aggravated robbery and served his full prison sentence because, as he admitted, he was not a model prisoner. He did not deny that he physically forced a woman into his car, threatened to rape her, tried to pull her pants down, stabbed her repeatedly with a screwdriver, and threw her in a closed garbage dumpster—an attack for which she was hospitalized for over five weeks. His only excuse for his actions was that he needed money for his family and his legal defense, yet this justification was undermined by the State's presentation evidence that Appellant used the money for unnecessary luxury items, like the $1,500 tire rims. Further, Appellant admitted that he attempted to escape three times following his arrest and threw cleaning solution into the eyes of a jail guard during one of those

22

attempts. Finally, the State argued to the jury that it could impose a life sentence for each of the aggravated robberies without objection or rebuttal from Appellant's trial counsel. Thus, even if the jury had been properly instructed, it would have reached the same result due to the overwhelming evidence and nature of so many other bad acts that would justify a life sentence. If only one extraneous offense is contested, the lack of a burden of proof instruction does not create egregious harm when numerous other extraneous offenses are presented to the jury. *See Yates*, 917 S.W.2d at 924.

After reviewing the trial record as a whole, we cannot conclude that Appellant was denied a fair and impartial trial. Although some harm may have resulted from the error, it was not egregious harm because the State presented overwhelming and uncontested evidence of many other violent acts for the jury to consider that justified a life sentence and nothing indicates that the aggravated sexual assault was heavily considered by the jury or that it was a critical issue in the trial. *See Allen*, 253 S.W.3d at 266; *Yates*, 917 S.W.3d at 923; *Almanza*, 686 S.W.2d at 171. Therefore, we overrule Appellant's second point.

## V. Cumulation Order

In his third point, Appellant argues that the cumulation order stacking his life sentence on top of the federal sentence he was already serving is defective

23

and should be voided because the stacking order in the judgment does not contain sufficient information to identify the earlier sentence.

## A. Standard of Review

The decision to run multiple sentences concurrently or cumulatively is at the discretion of the trial court. Tex. Code Crim. Proc. Ann. art. 42.08 (Vernon 2006); *Stokes v. State*, 688 S.W.2d 539, 540 (Tex. Crim. App. 1985). A cumulation order must be specific enough that prison authorities know how long to detain the prisoner. *Stokes*, 688 S.W.2d at 540. The Texas Court of Criminal Appeals has identified five elements for a valid cumulation order: (1) the cause number of the prior conviction; (2) the correct name of the trial court where the conviction was taken; (3) the date of the prior conviction; (4) the term of years of the prior conviction; and (5) the nature of the prior conviction. *Id.*; *Ward v. State*, 523 S.W.2d 681, 682 (Tex. Crim. App. 1975). However, not all elements are necessary for a cumulation order to be valid, so long as the earlier sentence with which the latest sentence will be cumulated can be properly identified. *Stokes*, 688 S.W.2d at 540.

The order should be sufficiently clear so that it may be understood without having to refer to other evidence. *Id.* When a cumulation order is not sufficiently clear, an appellate court may reform the order and affirm as modified if the record reveals all information required to reform it. *Banks v. State*, 708

24

S.W.2d 460, 462 (Tex. Crim. App. 1986).

## B. Analysis

The cumulation order from the trial court is as follows: "The sentence imposed under F-2007-0057-E (COUNTS I AND II)[13] shall commence when the sentence imposed in cause number 4:06CR0291-001 out of the US District Court, ceases to operate. The sentences shall run consecutively." Appellant argues that the cumulation order is insufficient because it identifies only the cause number of the earlier sentence, and thus fails to adequately identify that sentence. The State admits that the trial court did not adequately identify the earlier sentence and requests that this court modify the judgment to properly identify the earlier sentence.

An order that includes only the cause number of the earlier sentence may still be sufficient if the order is entered in the same court as the earlier sentence, if the order also states the correct name of the trial court, or if the order has other descriptive elements. *Williams v. State*, 675 S.W.2d 754, 764 (Tex. Crim. App. 1984) (op. on reh'g). A cumulation order will be upheld if it is specific enough to give notice to the prison officials and the defendant of

---

[13]These counts represent the two counts of aggravated robbery for which Appellant received this life sentence.

25

exactly which sentence the newest sentence will be cumulated with. *Id.*

The trial court's cumulation order is not sufficient to give adequate notice in this case. The only element it fully meets is that it includes the proper cause number. *See Stokes*, 688 S.W.2d at 540. Although it does state that the conviction came from the U.S. District Court, it does not state which district, and therefore does not present a proper court name. *Id.* The State does not contest Appellant's argument that the cumulation order is insufficient and admits that the identification "is rudimentary at best." Therefore, we find that the cumulation order is not specific enough to provide notice to prison officials of which sentence is to be cumulated. *Id.*

A court of appeals has the power to modify a trial court's judgment and to affirm it as modified. Tex. R. App. P. 43.2(b). An appellate court may reform a cumulation order if the necessary information is in the record. *Banks*, 708 S.W.2d at 462. If the record shows that when the trial court granted the motion to cumulate, it did so by referencing the information of the earlier sentence necessary to properly identify it, then an appellate court may reform the order. *Id.* at 461 (noting that the trial court indicated the cause number, proper name of the trial court, date of the sentence, the exact offense, and the term of years of the sentence, so all necessary information was in the record to reform a defective cumulation order).

Appellant argues that the record does not contain the necessary information to reform the order. However, the following exchange occurred when the trial court considered the motion to cumulate:

[Trial Court]: Okay. In the State of Texas versus James Sanders, after the jury was excused, the State has made it known to the court that they had filed a motion to have the sentence that was assessed by this jury run consecutive to the federal sentence that the defendant has. And does the State have anything else you wish to offer concerning that?

[State]: Judge, do you want me to state the cause number into the record or anything?

[Trial Court]: Yes.

[State]: It is for possession of a firearm by a felon. He received 300 months. The date of judgment was November 28th of 2000. In Cause Number -

[Trial Court]: 2000?

[State]: I'm sorry, 2007. Cause Number 4:06CR0291-001 in the U.S. District Court, Eastern District, in Sherman, Texas, the Honorable Michael Snider presiding.

That exchange reveals the cause number; that the sentence came from the U.S. District Court, Eastern District of Texas in Sherman, Texas; that the offense was possession of a firearm by a felon; that the sentence was for a term of three hundred months; and that Appellant was sentenced on November 28, 2007. Because the record provides the information for all five elements of a sufficient cumulation order, we shall modify the order and affirm it as

27

modified.  *See id.* at 462.  The cumulation order is modified to read:

> The sentence imposed under F-2007-0057-E (COUNTS I AND II) shall commence when the sentence imposed in cause number 4:06CR0291-001 out of the U.S. District Court, Eastern District of Texas in Sherman, Texas on November 28, 2007, for a term of three hundred months for the offense of possession of a firearm by a felon, ceases to operate.  The sentences shall run consecutively.

## VI.  Conclusion

Having overruled two of Appellant's issues and having modified the cumulation order, we affirm as modified.

PER CURIAM

PANEL: MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 2, 2008